### UNITED STATES of America

### v.

**Mutulu SHAKUR, a/k/a "Doc," a/k/a "Jeral Wayne Williams," Sekou Odinga, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," Bilal Sunni-Ali, a/k/a "William Johnson," a/k/a "Spirit," Silvia Baraldini, a/k/a "Louise," Susan Rosenberg, a/k/a "Elizabeth," Cheri Dalton, a/k/a "Nahanda," Iliana Robinson, a/k/a "Naomi," Nilse Cobeo, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa," and Alan Berkman, Defendants.**

No. SSS 82 Cr. 0312 (KTD).

United States District Court, S.D. New York.

Sept. 6, 1983.

As Amended Sept. 7, 1983.

See also 570 F.Supp. 333.

KEVIN THOMAS DUFFY, District Judge:

Mr. Chokwe Lumumba, Esq., co-counsel for defendant Bilal Sunni-Ali, was held in contempt on two occasions during the trial of the above case. I hereby set forth in this memorandum and order the events justifying the contempt citations and I further certify, pursuant to Fed.R.Crim.P. 42(a), that these events took place in my presence during the trial of *United States of America v. Mutulu Shakur, et al.,* 570 F.Supp. 333, SSS 82 Cr. 312 (KTD). The trial began on April 4, 1983 and the jury reached a verdict on September, 1983.

Mr. Lumumba, who was co-counsel for Mr. Sunni-Ali along with Ms. Lynne F. Stewart, demonstrated from the start of the trial his conscious desire to obstruct and disrupt the orderly trial of the six defendants on trial. His continuous and unrelenting attacks on the integrity of the court, his ceaseless attempts to bait the court, and his personal vilifications of the trial judge are all amply supported by the specifications and samples set forth below. Moreover, the trial transcript demonstrates that Mr. Lumumba's contumacious behavior was not part and parcel of a vigorous defense of his client but instead was intended to cause significant disruption of the proceedings.

I appreciate and abide by the principle that defense attorneys "be given great latitude in the area of vigorous advocacy." *In re Dellinger,* 461 F.2d 389, 398 (7th Cir. 1972). I further recognize the need to exercise judicial restraint and tolerance of statements uttered in the heat of trial passion. The behavior of Mr. Lumumba, however, crossed the line between "hesitating, begrudging obedience and open defiance," *id.* 461 F.2d at 399, and demands punishment as permitted in 18 U.S.C. § 401.

The Second Circuit approves of invocation of the summary contempt statute when "the contemnor's conduct ... rises to the level of an obstruction of and an imminent threat to the administration of justice, and it must be accompanied by the intention on the part of the contemnor to obstruct, disrupt or interfere with the administration of justice." *In re Williams,* 509 F.2d 949, 960 (2d Cir.1975). Mr. Lumumba's tone, attitude, and consistent beratement of the court rose to this level and required immediate action to prevent further disruption of the trial.

Mr. Lumumba was held in summary contempt on two occasions. The first contempt specification was issued on April 13, 1983 during jury selection. The following excerpt from the trial transcript demonstrates the ample basis for the contempt citation.

### I.

THE COURT: Well, do you think it would cause you any bias or prejudice one way or the other or sympathy either for or against the government or for or against the defendants on trial?

JUROR No. 9: It is the type of thing that would probably be in the back of one's mind and, therefore, effect one's concentration, I would imagine, and possibly eventually your impartiality. I don't know that it would be something direct.

THE COURT: But you think it could affect your impartiality?

JUROR No. 9: It is conceivable.

THE COURT: You are excused.

MR. BERMAN: Before we let her go, could we ask some questions if she discussed this with other jurors?

THE COURT: No. You are excused.

MR. BERMAN: Given she's excused—

THE COURT: Sit down, please.

MR. BERMAN: Could we keep her in the other room?

THE COURT: No. You are excused.

MR. LUMUMBA: What are you trying to hide? It is clear she's been misinformed and other people were misinformed. This is an obscene display of the court. I think it is ridiculous.

THE COURT: Call the next juror.

MR. BERMAN: All I ask is that we keep her available so we can ask her other questions.

THE CLERK: Seat number nine is number 21.

MR. BERMAN: Judge, can we at least try to explain or ask questions that ought to be asked of her whether she discussed this with other jurors?

MR. LUMUMBA: We would move that the other jurors themselves be brought in.

THE COURT: Bring in cardholder number 21.

MR. BERMAN: I don't see the point in making believe this didn't happen. You have a juror here who said she's been moved by this article—

THE COURT: Mr. Berman, if you want to make a record—

MR. BERMAN: It is not a matter of making a record. I am trying to persuade you. We give it to you in writing and it doesn't get dealt with. You never bother to say—

THE COURT: It does get read.

MR. BERMAN: When you give us an order to put it in a writing it winds up in the trash heap. You will decide before we give it anyway. It is not as if you can't rule on it now or "I'll take it later." Out of respect for this court I'm putting it in writing. I realize I have been a fool. What's the point of putting it in writing if you rule on it in advance.

THE COURT: I do give it consideration.

MR. BERMAN: There is a serious problem with the article—

THE COURT: Mr. Berman, we're getting the juror in here.

MR. BERMAN: Let the juror stay out for a second.

THE COURT: As soon as the juror shows up I'll be back.

MR. LUMUMBA: Judge, why can't you answer the question we posed to you as relates to the situation?

(Recess)

(Open Court)

(Juror Number nine entered the courtroom).

MR. LUMUMBA: Judge, before you continue—

(Pause)

THE COURT: Sir, are you all right, cardholder number 21? I understand you just tripped. Are you all right?

JUROR No. 9: Yes, I'm fine.

THE COURT: Could you tell us what county you come from?

JUROR No. 9: Manhattan.

MR. LUMUMBA: Excuse me, judge.

THE COURT: Manhattan?

JUROR No. 9: Yes.

MR. LUMUMBA: Judge, we have to deal—

THE COURT: Mr. Lumumba, this is a court order, Mr. Lumumba, that I am making right now for you to be quiet and sit down.

MR. LUMUMBA: Well, judge, I'm pointing out—

THE COURT: If you disobey that order—

MR. LUMUMBA: Are you trying to put me under an order so you don't have to deal with me?

THE COURT: Are you going to obey that order?

MR. LUMUMBA: Are you trying to hide an issue from this juror?

THE COURT: No. I am issuing an order for you to be quiet and sit down. Are you going to obey it or not?

MR. LUMUMBA: You won't listen to us when the juror isn't here, perhaps you'll listen now.

THE COURT: Are you going to obey it or not?

MR. LUMUMBA: Judge, the question I am asking you—

THE COURT: Are you going to obey it or not, yes or no?

MR. LUMUMBA: There is a matter to be heard. You just heard two jurors—

THE COURT: I am telling you now to sit down and be quiet.

MR. LUMUMBA: The fact that they are—

THE COURT: Take the juror out, Mr. Clerk.

(Juror number nine excused from the courtroom)

THE COURT: Mr. Marshal—

MS. TIPOGRAPH: I have to object to the manner in which you are treating co-counsel in this issue.

THE COURT: I'm sorry.

MR. SUNNI–ALI: I have to object to the way you are treating my lawyer in this instance and continuously since this incident started.

THE COURT: Mr. Lumumba is held in criminal contempt.

Trial Transcript at 927–31.

## II.

The second contempt specification was issued on June 8, 1983. The following excerpt substantiates this specification:

(Jury not present)

MR. LUMUMBA: Okay, can I ask this question as an offer of proof? The jury is not around, Judge. You don't have to worry about the jury finding out how the FBI treated the black liberation movement.

THE COURT: If that's what we are getting into, it has no place in this trial.

MR. LUMUMBA: Why has it no place in this trial? You are here prosecuting the black liberation movement. It has nothing to do with the way your government treated us in the past, right? It's insane.

THE COURT: Tell me what you are attempting to prove.

BY MR. LUMUMBA:

Q. Have you—

THE COURT: Step town [sic], Mr. Spriggle, and step outside.

Tell me what you are trying to prove.

MR. LUMUMBA: Fine. Let him go. Wait until he leaves. I don't want to him to hear it anyway because he will probably lie.

(Witness left the courtroom)

MR. LUMUMBA: The thing is that it is my belief that the document which is being entered into evidence, which you accepted into evidence for whatever reason, it doesn't talk about Brinks robberies or anything else, is a document which is totally consistent with documents which have pervaded the black liberation struggle since the time that the FBI has started killing different people in the movement, since the time that there was a manifest need for security, since the time that the black liberation movement has been paroling [sic] in communities trying to stop crime and therefore have had necessity for rules of this nature.

That being the case, I would like to point out through the specific document which you have suggested cannot come into evidence, which is almost identical in parts to this document, and through his knowledge of the documents which he may have examined, having been a person who has been in the FBI for 26 years during the period of

time in which they have examined the whole files, the total files of various different movements, he can tell us that the principles in this document are not inconsistent with many of those other principles which come from groups which clearly had nothing to do with robbing Brinks trucks and were totally overground political formations which were functioning in a way which was legal even by corrupt laws of the United States.

So the point that I am trying to make here is this, that if they are allowed to issue a document which has prejudicial impact if not explained, then I have a right to go into it and to explain it through this witness. That's one point.

Another point is I would like some kind of ruling on why you won't let me do what you let them do and then have the audacity to sit on the bench and claim you are fair.

THE COURT: Look Mr. Lumumba, you have been held in contempt more than once and you are held in contempt again.

MR. LUMUMBA: Really, I didn't help know that.

THE COURT: It doesn't much matter at this point.

MR. LUMUMBA: That's what I told you at this point.

THE COURT: It will at the end of this trial, but that's one of those things.

MS. TIPOGRAPH: I object to threats in this case.

MR. SUNNI–ALI: He asked a plain question and you come up threatening.

MR. LUMUMBA: I will tell you I am intimidated and I am going to quit, and that being the case my man doesn't have any representation.

I can't function any more. You have intimidated me. What am I doing going to do? My man doesn't have representation.

I ask for a mistrial, Judge. I am scared. I am serious. I don't know if I can function any more properly. I am going to leave you.

THE COURT: The motion is denied. You don't have to leave, Mr. Lumumba, sit down. You have a client to represent.

MR. LUMUMBA: I can't do it.

THE COURT: Well, sit there anyway and try.

Okay, you are ready to start on your cross-examination, Mr. Mogulescu? Mr. Lumumba is finished.

MR. LUMUMBA: I am not finished with mine.

THE COURT: Yes, you are. You are finished.

MR. SUNNI–ALI: Run boy, run.

THE COURT: From what?

MR. LUMUMBA: Have you ruled?

MR. SUNNI–ALI: On the truth.

MR. LUMUMBA: On the motion.

THE COURT: Yes, your motion for a mistrial is denied. Your offer of proof in connection with this particular witness is also denied.

MR. LUMUMBA: Why?

THE COURT: I don't have to explain. It's denied.

Trial Transcript at 4822–26.

These contempt citations justify the invocation of the discretionary power vested in me by 18 U.S.C. § 401 to punish Mr. Lumumba by imposition of a fine or a term of imprisonment. Mr. Lumumba's conduct throughout the trial, in addition to the two specifications set forth above, further mandates punishment. The following excerpts from the trial transcript are merely a sample of his antics and clearly document his contumacious behavior:

MR. LUMUMBA: I have an application that I would like to make on behalf of Mr. Johnson. Mr. Ali, excuse me, Judge.

The situation that we would like to do at this time is to challenge the entire jury panel.

THE COURT: That is denied. Sit down and write it out. Make it part of the record, Mr. Lumumba.

MR. LUMUMBA: Excuse me.

THE COURT: Mr. Lumumba, we will make it part of the record. Sit down.

MR. LUMUMBA: We can make it part of the record right now.

THE COURT: Denied. Write it out. Anybody else?

MR. BERMAN: Could we have a minute or two to write it out?

THE COURT: Write it out.

MR. LUMUMBA: I think—

THE COURT: Write it out, Mr. Lumumba.

MR. LUMUMBA: I think we can facilitate it—

THE COURT: Mr. Lumumba, write it out.

MR. LUMUMBA: I have no problem with that. Is there somebody here you don't want to hear, Judge?

THE COURT: [What] I want to hear is who is challenged by the defendants.

MR. LUMUMBA: It is you who doesn't want to hear it.

THE COURT: Sit down, Mr. Lumumba. Who is challenged?

MR. LUMUMBA: Are you asking me to sit down?

THE COURT: The defendants waive their challenge.

MR. BERMAN: We don't waive our challenge.

THE COURT: Who do you challenge? That is what I want to know.

MR. MOGULESCU: No. 9, Judge, Juror No. 55.

THE CLERK: Seat number 9 is now 93.

MR. BERMAN: Judge, has your clerk or somebody had a chance to Xerox that newspaper article yet?

THE COURT: I haven't seen it.

MR. BERMAN: I think that is our only copy of it.

MR. LUMUMBA: Judge, might I mention this before the next potential juror comes out, is that I think the questions that we have to raise about the challenge to the panel should be raised now because if they are not, we think perhaps you will continue to taint, to pollute the jury, and it is necessary to raise it now to save anything further and to save you time because if we continue to do it and then you have to grant the motion later on, then you have more time you have to spend.

THE COURT: No, Mr. Lumumba. Thank you very much. You write it out and I will read it.

Trial Transcript at 867–69.

THE COURT: I forget exactly what you told us about, but I remembered—let me ask you a question.

Would you be willing to listen to the testimony and decide this case fairly and impartially on the evidence given in court here alone?

JUROR No. 11: No.

THE COURT: Okay. I kind of remembered but I wanted to follow up on that.

JUROR No. 11: Yes.

THE COURT: You are excused.

(Juror number 11, cardholder number 95 was excused)

THE CLERK: Juror—

MR. LUMUMBA: Judge, I want to object to the different way that you treated that black juror from the previous white juror.

I noticed after the white juror—you elicited a response which clearly showed he was biased, you went out of the way to cure it; to instruct him what he ought to do and asked him if he would do it. The black juror, which we just saw, she indicated that she would have some problems and you just summarily dismissed her without asking us if we had any curative questions we would like to ask. I would like to ask the court to call the juror back and cure that—

THE COURT: Mr. Lumumba, you weren't here and you don't know what went on. Sit down.

MR. LUMUMBA: You were here when you did what I just said you did.

THE COURT: Sit down.

MR. LUMUMBA: I was here—

THE COURT: Mr. Lumumba, sit down. Mr. Lumumba, I said sit down.

MR. LUMUMBA: I know your courtesy is a little better than that.

THE COURT: Sit down, Mr. Lumumba.

MR. LUMUMBA: That's the way you give dogs and children instructions. I had some other motions I want to make at this time.

THE COURT: Sit down.

MR. LUMUMBA: You are denying my motion before you hear them?

THE COURT: Yes.

MR. LUMUMBA: Is that what you are doing?

THE COURT: I am telling you right now to sit down.

MR. LUMUMBA: Are you denying my motions before I make them?

THE COURT: I am not hearing motions right now.

MR. LUMUMBA: These are appropriate before the next juror comes in.

THE COURT: I'm not hearing them now.

MR. LUMUMBA: I have some appropriate motions I want you to hear before the next—

THE COURT: Not now.

MR. LUMUMBA: You can explain to me something I missed, why you operate this courtroom in such a fashion that you don't even here [sic] motions before you tell people summarily to sit down.

THE COURT: Sit down, Mr. Lumumba.

MR. LUMUMBA: That's the way why you treat people in this courtroom as if they were children or animals? If I were to respond to you in some type of derogatory way, you would be offended.

THE COURT: Mr. Lumumba—

MR. LUMUMBA: Mr. Lumumba is appropriate. If you want to ask me to do something, you can say please or something like that.

THE COURT: Sit down.

MR. LUMUMBA: When will we be able to hear motions? That's the question at hand.

THE COURT: I will let you know.

MR. LUMUMBA: Can you let me know now?

THE COURT: No. You will have lots of time to prepare.

MR. LUMUMBA: Pardon?

THE COURT: You'll have time to prepare.

Trial Transcript at 886–89.

Q. Is testifying part of that?

MR. LITT: Objection.

THE COURT: Sustained.

MR. LUMUMBA: Why are you sustaining that objection, Judge?

I thought I could inquire.

THE COURT: Why don't you look it up in the books.

MR. LUMUMBA: Well, which books were you referring to?

Not the ones I have read. I probably finished higher in my law school than you did and they don't deal with that.

Trial Transcript at 2281.

Q. And in exchange for your guilty plea you promised to come here and testify against the people sitting at the table, is that right?

MR. LITT: Objection.

THE COURT: Sustained.

MR. LUMUMBA: Now, like this motivation about his coming here to testify is not relevant—

THE COURT: Sure it is in front of the jury.

MR. LUMUMBA: Oh, I see. In front of the jury.

THE COURT: We're doing an identification hearing.

MR. LUMUMBA: You're not concerned about whether he's telling the truth.

THE COURT: Yes, I am.

MR. LUMUMBA: If you are concerned about whether he's telling the truth, you're concerned about what kind of pressures are on him. That's fundamental text book law.

THE COURT: No. Next question.

Q. In any event, have they told you that—what did they tell you you had to testify to in order to get this report to the Judge?

MR. LITT: Objection.

THE COURT: Sustained.

Q. Did they tell you that you had to tell the truth?

MR. LITT: Your Honor, among other things, could you ask Mr. Lumumba not to sit in the jury box while he asks questions?

THE COURT: Get out of there. Come on.

Look, Mr. Lumumba, it doesn't bother me in the slightest bit, but your disrespect for this court is absolutely incredible.

MR. LUMUMBA: Well, Judge your disrespect for Black people is—

THE COURT: No, no. Get up and get back to where you were.

MR. LUMUMBA: You have been performing like an outstanding bigot.

THE COURT: Not in the slightest bit.

MR. LUMUMBA: That's what all bigots say.

THE COURT: Get out of the jury box.

MR. LUMUMBA: You have this little puppet on a string up on the stand and you don't want him asked questions no matter what the questions are and then you have the audacity to—

THE COURT: Ask the question or I will assume you have finished.

Trial Transcript at 2282–84.

MR. LUMUMBA: Judge, it is just my observation that you have absolutely—

MR. LITT: Objection.

MR. LUMUMBA: —granted every objection they made and overruled every one we made. Are you trying to be fair about this?

THE COURT: Please, Mr. Lumumba. Next question.

MR. LUMUMBA: They don't need another prosecutor, Judge.

THE COURT: Next question, Mr. Lumumba.

MR. LUMUMBA: Judge, I don't have any further questions. Thank you very much.

Trial Transcript at 2378–79.

Q. Do you recall ever robbing a bank with him?

MR. BERMAN: Objection.

MR. MOGULESCU: Objection.

MR. LUMUMBA: Objection.

THE COURT: No, I'll permit it. Go ahead.

MR. LUMUMBA: Judge, is it possible that you could testify as the witness?

THE COURT: Sit down now. Sit down.

MR. LUMUMBA: My objection is noted.

THE COURT: Sit down.

Trial Transcript at 2386–87.

THE COURT: Next thing.

It would appear that some of the defendants have decided that it suits them to yell out things during the trial. It may suit them individually. I suggest, however, that it does not benefit for their co-defendants and actually works to the great detriment of their co-defendants.

In order to make sure that those who want to get a fair trial do get a fair trial I want to remind you that if you insist upon yelling out things we will put you back in the pen and you will listen on our new hifi system here and you can yell all you want to in the pen, but not in the courtroom. It works a tremendous detriment to your co-defendants. It hurts them something awful. And my job is to make sure that the people who want to get a fair trial do get a fair trial.

I am going to try and do that.

Now, have you guys got anything?

MR. LUMUMBA: Yes, Judge, I do. I would like to say this.

I think that if there was some problem of anything that anybody said to a co-defend-

ant then it is the responsibility of that defendant or that lawyer who represents that defendant to raise it. No one has raised that to you. In my view, what you said is basically nothing but a veiled threat in order to try to shield people's discretion on responses—

THE COURT: It is not a veiled threat at all.

MR. LUMUMBA: And for your failing to do the job continuously throughout the trial. You haven't been fair at this point, why should we take it that you are trying to be fair now. This kind of silly sobbing, patronizing, condescending appeal to the press is ridiculous. There is no way in the world you have been fair.

THE COURT: The only person who is trying to work for the press coverage here, Mr. Lumumba, that I can see so far, is yourself.

MR. LUMUMBA: Is that right? If you feel that way then recuse yourself and let's get a judge that can work with me.

THE COURT: Work with you?

MR. LUMUMBA: Anything that's come out of this trial has been a response to the ridiculous way that you have been trying to chill people since you first got here, but I will continue to represent this man.

You came in here talking about pushing buttons—

THE COURT: This is not ridiculous at all, Mr. Lumumba, and I would suggest that we have finished that part of the conversation.

Is there anything else that anyone wants to say?

MR. LUMUMBA: I haven't finished that part of the conversation.

THE COURT: Well, I have.

MR. LUMUMBA: Well, you see, that's one of the problems.

THE COURT: Mr. Lumumba, you have been looking—looking for me to hold you in contempt—

MR. LUMUMBA: I haven't been looking for you at all. I haven't been looking for you at all.

THE COURT: I held you in contempt. You will be sentenced at the end of this trial.

MR. LUMUMBA: Fine, fine. Any time, Judge, any time. All right?

THE COURT: No, you might get any time.

MR. LUMUMBA: Any time, don't—I know. I don't want you to sleep too hard on it. Because the reality is you can do all the talking you want but as long as I am in here representing somebody charged with life imprisonment, your little threats don't make that much difference.

Trial Transcript at 2646–49.

THE COURT: My ruling is, what you are asking for and trying to elicit is pure hearsay.

MR. LUMUMBA: That's what I thought, that's what I thought.

Here is the problem I have with that. It is a novel ruling for this Court to rule on hearsay, to say it is inadmissible. Every time the prosecution has gotten, from the very first question they asked of the very first witness, they have been eliciting from witnesses as to what Mutulu Shakur said, as to what so and so said.

Look, the problem, there was no conspiracy existing when they asked those questions. You let them ask the questions, sometimes subject to tying them up, sometimes just to ask them, letting them in.

That's really problematic, so you are going to put us through the difficulty of trying to track down people that they will not even—they could have given us at the beginning of the case. And I raised this at the very beginning of the case. I think that my co-counsel raised it even before I got here.

THE COURT: The ruling is that you are not going to try and bring out somebody's —I don't even know if it is an identification or what, through O'Grady, who was not there, obviously. And if you persist in do-

ing it, I am going to instruct the jury that O'Grady was not there and that these things, whatever they might be, you can bring in whoever you want to testify as to whatever you want to, but that puts you in a strange position, then, putting on a defense, which I certainly don't want to put you into.

If you want to bring these people in, fine. I'm not telling you how to run your case, nor am I [telling] the government how to run theirs.

MR. LUMUMBA: You have been doing your best at that anyway.

THE COURT: Come on, please. Look, let's not engage in personalities.

MR. LUMUMBA: Let me finish what I am saying because if you listen to me for a minute you might understand, Judge.

The reality is by allowing them to bring in totally rank hearsay, allowing them to bring in all types of evidence, alleged evidence, guns and stuff which are not related to the case, you put us in the position of having to explain those things. And that's the problem that we have. You put us in a position to have to put on a defense anyway.

THE COURT: That's not the way the—

MR. LUMUMBA: You are not supposed to have hearsay in cases. If you start with that premise, then you end with it, that's the problem.

THE COURT: There is a whole raft of cases in books that permits everyone one of the rulings, even encourages the rulings that I have made, and which prohibits you from bringing in what you are attempting to bring in in the way you are attempting to bring it in.

MR. LUMUMBA: How about the rulings that prohibits the prosecution from asking police officers to make statements which basically are used to offer prior consistent statements of witnesses who already testified, like you did in the case Tyrone Rison. I mean, I don't understand, you allow—

THE COURT: Let's talk about your hearsay.

MR. LUMUMBA: Let's talk about that, let me ask you this. We just offered—

THE COURT: What you are offering is rank hearsay.

MR. LUMUMBA: Yes, the same kinds of stuff you have been letting in all through the trial.

THE COURT: I am telling you what you are offering is hearsay. If it is hearsay, it is excludable. There is no exception for it that I know of.

MR. LUMUMBA: There is a business record exception.

THE COURT: There is no business record exception.

MR. LUMUMBA: Why not?

THE COURT: Not for this.

MR. LUMUMBA: Why not?

THE COURT: You tell me.

MR. LUMUMBA: I want you to tell me, I want to know if you really know your evidence, why—

THE COURT: Please—

MR. LUMUMBA: I am serious.

THE COURT: I run a court, Mr. Lumumba, I have a class Tuesday evenings, New York University Law School, if you want to attend.

MR. LUMUMBA: Are you asking me to come as a guest lecturer?

I think the question is this, Judge—

THE COURT: Come on, if you disagree with it, appeal it. The ruling is the ruling.

MS. TIPOGRAPH: Judge, why don't you sentence them first and then we will appeal.

THE COURT: Ms. Tipograph.

MR. LUMUMBA: Judge, you don't really run a classroom like this courtroom, I hope, because then you are teaching your students, the future lawyers—

THE COURT: The ruling is what the ruling is. Now, if you would like to continue the conversation, I don't want the jury here. This is silly, the ruling is what it is and it is going to stay and that's all there is

to it. Now, do you have any more questions for Mr. O'Grady?

MR. LUMUMBA: Let me just—this is the final comment I will make on it. I think the reason that you don't want to put your business record rationale on the record why it cannot come in as business records is because once it is on the record it will be obvious you let a lot of things in for the prosecutor's office basically in the face of violating that record exception itself. I think that's reason.

I think that's reason you don't want to talk about this stuff. That gives you the discretion and vacillating ability to do one thing at one time and something else when it fits your fancy. That's why you don't want to justify your reason on the record.

THE COURT: Take it up with thje [sic] Court of Appeals.

All right, bring back the jury and the witness.
Trial Transcript at 4332–36.

MR. LUMUMBA: He talked about the Bronx case. That's what he talked about.

THE COURT: No. He also talked about the fact that he's a detective and you don't get all the records of him as being a detective.

MR. LUMUMBA: Here is the other problem. If you had that to say about it, why didn't you tell the jury that you were going to deny us an opportunity to see records that had the accurate descriptions. Why didn't you say that in front of the jury? You let them believe that and then you are going to tell us we are going to get the reports and then giving them the impression that we might get them. You're a hypocrite, Judge.

A VOICE: Right on.

MR. LUMUMBA: You're a hypocrite. I don't mind it if you want to be a hypocrite but when you are dealing with people I'm defending then that's a problem.

THE COURT: I tell you what. You can call me names, but what I would suggest you do is get me [a] case reference which

says I am wrong. I'll see you back here tomorrow.
Trial Transcript at 4365–66.

MR. LUMUMBA: We tried to get the document into evidence called The New Afrikan Creed and it also talks about family. Are you going to receive that now? And it has fingerprints on it. It is in that pile which you haven't ruled on.

THE COURT: No.

Okay, is there anything else?

MR. LUMUMBA: If Litt offers it you will take it, right?

THE COURT: Is there anything else that we have?

MR. LUMUMBA: I am talking about something now, talking about anything else.

THE COURT: I am not talking about that.

MR. LUMUMBA: You are a disgusting bigoted partial joke. It's ridiculous for you to take—it is clearly trying to prove an act which is not charged in the indictment at all.

THE COURT: All right, anything else?
Trial Transcript at 4774.

MR. LUMUMBA: You are denying my motion for an adjournment?

THE COURT: That's right.

MR. LUMUMBA: Thank you.

The other thing is I want to make an application for CJA—

THE COURT: Do it on papers.

MR. LUMUMBA: I will do it orally and on papers.

THE COURT: No, you won't. Bring in the witness, please.

MR. LUMUMBA: I will talk with him out here, I don't care.

THE COURT: I don't care either.

MR. LUMUMBA: The situation—

THE COURT: Look, if you want to eat up Mr. Stern's time, that's between you and him.

MR. LUMUMBA: You are saying you are going to cut his off shortly?

THE COURT: We are not going to waste any time.

MR. LUMUMBA: You will dog us any way you can, is that it?

THE COURT: Oh, come on.

MR. LUMUMBA: Oh, come on, Judge.

THE COURT: Bring in the witness.

MR. LUMUMBA: Aw, come on, we ain't going to pay the attorneys no money, we're going to starve, evict the clients. I am not that bad of a guy.

THE COURT: All right, Mr. Stern.

Trial Transcript at 5043–44.

Q. Was there any discussion during that conversation of any kind of criminal activity?

MS. MORITZ: Objection.

THE COURT: Sustained.

MR. LUMUMBA: That's the same question that you have allowed a number of other attorneys to ask and get answers to. Now, what is the reason for the change of policy at this point?

THE COURT: Because I sustain the objection this time. Next question.

MR. LUMUMBA: Well, what is it? I mean, you just don't like black men? Is that what it's about?

THE COURT: Next question.

MR. LUMUMBA: I want a reason why you allow other attorneys to ask questions and you don't allow me to ask them.

THE COURT: Either ask the next question or the hearing is over.

MR. LUMUMBA: I am asking the next question. It's to you.

THE COURT: The hearing is over.

MR. LUMUMBA: I'm not finished with the hearing.

THE COURT: I don't care. You're finished.

MR. LUMUMBA: I'm not finished with the hearing. And for the record, you're depriving us of a full hearing.

THE COURT: Take him out.

(Witness excused)

MR. LUMUMBA: I want to make a record of it too.

THE COURT: No. The hearing is over.

MR. LUMUMBA: Why did you terminate the hearing and why are you depriving me of a right to ask questions that everybody else asks? Other than being a racist dog, is there any other reason?

THE COURT: Mr. Lumumba, you have been held in contempt now three, four times. You're going to be sentenced at the end. I don't know what you're trying to do.

MR. LUMUMBA: I'm trying to get some justice.

Trial Transcript at 5083–84.

THE COURT: I understand what you're talking about now. Okay.

MR. LUMUMBA: Judge, this is so the record is perfectly clear. On the ruling on this request that Miss Tipograph made right before you left the courtroom, there was not two or three people talking until you left the courtroom and precipitously indicated "Oh, sure," and walked off the bench, and at that point is when a lot of people started talking in reaction to what they felt was totally inappropriate, improper conduct on your part, very unbecoming of anyone trying to make a judicial decision.

It was clear that you were making a decision and that you didn't want to be bothered. That's when a lot of people started talking. I think the transcript, if it's garbled, will bear me out at the point where it is garbled.

Trial Transcript at 5544.

THE COURT: Anybody else?

MR. LUMUMBA: I might as well also add, as my co-counsel pointed out, in your handwriting example you also highlighted a situation only applying to my client by telling the jurors an example about reading a letter from Uncle Charlie. The prosecution invited the jurors to make analysis of handwriting in the ledger which had not been

confirmed by any expert. And for you to make that kind of a reference in that kind—your inference to the jury that they could do that on their own I think plays right to this case.

So this situation here, we see it clearly as a directed verdict of guilty, and also we clearly see it as a second rebuttal. We anticipated at least a second rebuttal. Your character and your behavior throughout the trial has pretty much suggested that. The directed verdict is even a little bit astonishing to us. But we know, and it reconfirms our beliefs.

THE COURT: Mr. Stern?

Trial Transcript at 9865–66.

MR. BERMAN: I think that was a poor choice of an example, to put it mildly, Judge. I really think it was a bad choice of an example.

I also join on the question of cumulative evidence. I mean, the long example—

THE COURT: OK, all right. Anything else?

MR. BERMAN: —was not necessary.

MR. LUMUMBA: Why don't you wait? I know you're ready to get this conviction over with, but let him finish.

THE COURT: Mr. Lumumba—

MR. LUMUMBA: "Anything else?"

THE COURT: Mr. Lumumba, you don't seem to want to stay here.

MR. LUMUMBA: Look it here. You want to remove me? Remove me. All right.

THE COURT: I am thinking about it.

MR. LUMUMBA: Think about it. Because we will resolve this question; right? We will resolve this. Maybe not in your courtroom, but this question will be resolved.

THE COURT: I am sure.

Is that a threat, Mr. Lumumba?

MR. LUMUMBA: Me threaten you, a powerful man like you? Come on, Judge.

THE COURT: It sounded like it.

Trial Transcript at 9859–60.

The cold record cannot convey the total disrespect shown by Mr. Lumumba's mocking, condescending actions and the querulous, acidic, baiting tone of voice used by him in addressing the court.

It is interesting to note that shocked spectators attending the trial asked court personnel if this type of behavior was usually tolerated by the court. Punishment of Mr. Lumumba for his outrageous behavior is thus also mandated as a general deterrent.

The conduct reflected both in the two contempt specifications and the total trial transcript was clearly contemptuous. Accordingly, pursuant to the power vested in me by 18 U.S.C. § 401 I hereby hold Mr. Lumumba in contempt of court. Pursuant to Rule 18 of the Rules of this Court the matter is referred to the Assignment Committee for transfer by lot for further proceedings including the determination of the appropriate punishment to be imposed on the respondent Chokwe Lumumba for the specified findings of contempt.

SO ORDERED.