UNITED STATES of America, Appellee,

v.

Chokwe LUMUMBA, Appellant.

No. 747, Docket 85–1106.

United States Court of Appeals,
Second Circuit.

Argued Jan. 27, 1986.

Decided June 27, 1986.

Harry A. Davis, Detroit, Mich., Robert Dawkins, arguing pro hac vice, for appellant.

Paul E. Summit, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., for S.D.N.Y., Stuart E. Abrams, Asst. U.S. Atty., of counsel), for appellee.

Before FRIENDLY,* OAKES, and WINTER, Circuit Judges.

OAKES, Circuit Judge:

Not long ago we held that:

To warrant a conviction in criminal contempt, the contemnor's conduct must constitute misbehavior which rises to the level of an obstruction of and an imminent threat to the administration of justice, and it must be accompanied by the intention on the part of the contemnor to obstruct, disrupt or interfere with the administration of justice.

*In re Williams*, 509 F.2d 949, 960 (2d Cir. 1975) (citing *Eaton v. City of Tulsa*, 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974); *In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972)). Because we find that the appellant's conduct rose to this level of misbehavior, we affirm the judgment of the district court.

This appeal presents the question whether appellant, Chokwe Lumumba, Esq., was properly held in criminal contempt on two counts. The first contempt citation occurred during the jury voir dire of a lengthy criminal trial in which Lumumba represented one of the codefendants when Lumumba, in the presence of a venireman, declined to obey an order of the court to "be quiet and sit down." The second occurred during the course of the trial and was issued after a number of remarks that, to say the least, were disrespectful of the

judge, if not downright insulting to him. With regard to each count, the trial judge, Kevin Thomas Duffy, cited Lumumba at the time the conduct occurred, but final adjudication and sentencing was deferred until after the trial's conclusion. At that time, pursuant to Fed.R.Crim.P. 42(a) and 18 U.S.C. § 401 (1982), Judge Duffy summarily adjudicated Lumumba in criminal contempt and referred the matter to the Assignment Committee pursuant to Rule 18 of the Rules for the Division of Business Among Southern District Court Judges for transfer to another judge for sentencing. *United States v. Shakur*, 570 F.Supp. 336 (S.D.N.Y.1983).

After denying various motions brought by Lumumba, *United States v. Lumumba*, 578 F.Supp. 100 (S.D.N.Y.1983), Judge Robert W. Sweet sentenced Lumumba to three years' probation with the condition that he perform 350 hours of community service during the first fifteen months of the probationary term. On appeal, this court reversed and remanded. 741 F.2d 12 (2d Cir.1984). We held that where a lawyer is cited for criminal contempt during trial, but adjudication and punishment are deferred until after trial, he is entitled to notice and a hearing pursuant to Fed.R.Crim.P. 42(b), although not necessarily a "full-blown" trial, before a judge other than the trial judge. *Id.* at 17.

On remand, Judge Sweet held that formal notice of the charges was unnecessary since Lumumba had actual notice, that Lumumba was not entitled to a jury trial, and that Lumumba could address the appropriateness of his own conduct, but not the alleged bias of the presiding judge. 598 F.Supp. 209 (S.D.N.Y.1984). In accordance with the directions of this court, 741 F.2d at 17, Lumumba was given "a reasonable opportunity to defend or explain his actions or present arguments in mitigation" in a hearing before Judge Sweet. 603 F.Supp. 913, 914 (S.D.N.Y.1985). Lumumba was again convicted of criminal contempt on

---

* The case has been decided pursuant to § 0.14 of the Rules of the United States Court of Appeals for the Second Circuit. Subsequent to argu-

ment, Judge Friendly died. Prior to his death, however, he voted to affirm the judgment.

both counts and received the same sentence as before, except the community service is to be performed during the first eighteen months of the probationary term.

The criminal trial at which Lumumba made the comments that are at issue here concerned the so-called Brinks armored-car robbery at Nanuet, New York, and ran from April 4 to September 3, 1983. Lumumba's client, Bilal Sunni-Ali, was acquitted, although four of the five co-defendants with whom he was tried were convicted as accessories after the fact to armed robbery or of participation in a racketeering enterprise that involved a series of armored truck robberies, two murders, and the prison escape of Black Liberation Army leader Joanne Chesimard, *see generally United States v. Ferguson,* 758 F.2d 843 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985). We agree with Judge Duffy that "Mr. Lumumba ... demonstrated from the start of the trial his conscious desire to obstruct and disrupt the orderly trial of the six defendants on trial. . . . not [as] part and parcel of a vigorous defense of his client but instead [intentionally] to cause significant disruption of the proceedings." *Shakur,* 570 F.Supp. at 337.

Preliminarily, we note that it is useful for analytical purposes to divide the forms of misconduct in the courtroom by attorneys that are punishable by contempt into three general categories—(1) refusal to obey a proper court order or proper court procedures; (2) disrespectful remarks to the court, opposing counsel, or other parties; and (3) excessive or repetitive argumentation or other willful delay of the proceedings. The first contempt charge here falls into the first category since it involves disregard of court orders and the second contempt charge falls into the second category because it concerns disrespectful remarks.

We have little difficulty with the first contempt citation. During the jury voir dire in the mid-morning of April 13, 1983, Lumumba first appeared as co-counsel, with Lynne F. Stewart, Esq., on behalf of defendant Sunni-Ali. Shortly thereafter he orally moved to strike the entire jury panel, a motion which had just been denied when made by another attorney. The motion was denied and the court advised Lumumba to put the motion in writing, a procedure to which the court had required all defense counsel to adhere, and stated that the written motion would be made a part of the record. Lumumba persisted in his attempt to make his motion orally, and when the judge attempted to move on to the peremptory challenges Lumumba first accused him of unwillingness to hear the defendant's contentions and then stated that "we think perhaps you will continue to taint, to pollute the jury." When the court excused a black prospective juror who stated that she could not decide the case fairly and impartially solely on the evidence given in court, Lumumba contended that the judge's action was precipitous and accused him of being inconsistent in his treatment of white and black veniremen. When the court noted that Lumumba had not been present for earlier voir dire and ordered him to "sit down," Lumumba refused, stating, "That's the way you give dogs and children instructions," and insisted he had other "appropriate" motions to make. Finally, later in the day, when, in accordance with the customary practice in the Southern District, the judge was questioning a prospective juror, Lumumba interrupted and attempted to continue to argue matters upon which the court had already ruled. After Lumumba again ignored several orders of the court to "be quiet and sit down," and repeated his charge that the court was unwilling to listen to the defendant's contentions, Judge Duffy excused the venireman from the courtroom and held Lumumba in criminal contempt. The exchange leading to the contempt citation is set out in the margin.[1]

---

1. THE COURT: Could you tell us what county you come from?
    JUROR No. 9: Manhattan.
    MR. LUMUMBA: Excuse me, judge.

THE COURT: Manhattan?
JUROR No. 9: Yes.
MR. LUMUMBA: Judge, we have to deal—

■ While a lawyer has the right and duty to argue vigorously all points that he believes are properly advanced on behalf of his client, he must obey a direct order of the court, such as an order to cease argument, no matter how arbitrary he may believe it to be. *Maness v. Meyers,* 419 U.S. 449, 458–60, 95 S.Ct. 584, 590–92, 42 L.Ed.2d 574 (1975); *In re Weiss,* 703 F.2d 653, 660 (2d Cir.1983). Justice Jackson stated the law with his typical clarity and succinctness in *Sacher v. United States,* 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952):

> Of course, it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts. But if the ruling is adverse, it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal. During a trial, lawyers must speak, each in his own time and within his allowed time, and with relevance and moderation. These are such obvious matters that we should not remind the bar of them were it not for the misconceptions manifest in this case.

Lumumba was not held in contempt for an "earnest request for voir dire," as he claims in his brief. Rather, he was held in contempt only after he had been repeatedly ordered to sit down and stop rearguing objections upon which the court had already ruled. His direct disobedience of a court order threatened to delay the proceedings, to interfere with jury selection, and, occurring as it did on the first day of his presence in the courtroom, to disrupt the orderly proceeding of the trial. As the Seventh Circuit explained in the "Chicago Seven" conspiracy case, "failure to heed the directive of the court to desist from arguing, to sit down, or to remain quiet may indeed constitute an actual material obstruction to the administration of justice." *United States v. Seale,* 461 F.2d 345, 371 (7th Cir.1972). Any other result would create chaos in the courtroom; while surely "[a] certain amount of leeway must be allowed," *id.,* when the directive is clear and counsel understands it, he must obey even if he feels his obedience may risk prejudicing his client's substantive case. Perhaps Lumumba felt it important to establish his defiance of the court and of the judicial system on his very first day in court. At the same time, it was important for the judge to set the pace and tone of the trial and Lumumba, by ignoring a repeated explicit order of the court, clearly obstructed the progress of the voir dire.

■ The second contempt citation is of a different nature, as it concerns disrespectful remarks rather than disobedience of a

THE COURT: Mr. Lumumba, this is a court order, Mr. Lumumba, that I am making right now for you to be quiet and sit down.

MR. LUMUMBA: Well, judge, I'm pointing out—

THE COURT: If you disobey that order—

MR. LUMUMBA: Are you trying to put me under an order so you don't have to deal with me?

THE COURT: Are you going to obey that order?

MR. LUMUMBA: Are you trying to hide an issue from this juror?

THE COURT: No. I am issuing an order for you to be quiet and sit down.

Are you going to obey it or not?

MR. LUMUMBA: You won't listen to us when the juror isn't here, perhaps you'll listen now.

THE COURT: Are you going to obey it or not?

MR. LUMUMBA: Judge, the question I am asking you—

THE COURT: Are you going to obey it or not, yes or no?

MR. LUMUMBA: There is a matter to be heard. You just heard two jurors—

THE COURT: I am telling you now to sit down and be quiet.

MR. LUMUMBA: The fact that they are—

THE COURT: Take the juror out, Mr. Clerk.

(Juror number nine excused from the courtroom)

THE COURT: Mr. Marshal—

MS. TIPOGRAPH: I have to object to the manner in which you are treating co-counsel in this issue.

THE COURT: I'm sorry.

MR. SUNNI-ALI: I have to object to the day you are treating my lawyer in this instance and continuously since this incident started.

THE COURT: Mr. Lumumba is held in criminal contempt.

court order. While such remarks or insults should be discouraged so as to preserve a rational thought process in the courtroom, *see Disorder in the Court* at 149, it is sometimes difficult to draw a line between a comment that is merely disrespectful and one that should be punished as contemptuous for obstructing and imminently threatening the administration of justice under *In re Williams*, 509 F.2d at 960. *See also Seale*, 461 F.2d at 369–70 (improper for a court to slide easily from a finding of disrespect to one of subverting and preventing justice). The Court in *Little*, 404 U.S. 553, 92 S.Ct. 659, also warned against trial judges' confusing offenses to their sensibilities with obstruction of the administration of justice. *Id.* at 555, 92 S.Ct. at 660. Although courts cannot uphold the contempt if the cited conduct is not contumacious but other uncited conduct is or has been, *Eaton*, 415 U.S. at 698–99, 94 S.Ct. at 1229–30, a court can nevertheless look at the cited conduct in the context of other closely related behavior in the case to determine if that conduct is in fact contumacious. *See United States v. Martin-Trigo-na*, 759 F.2d 1017, 1025–26 (2d Cir.1985); *In re Dellinger*, 461 F.2d 389, 401 (7th Cir.1972); *Seale*, 461 F.2d at 371.

While a written record, even when supplemented, as here, by comments of the trial judge,[2] of course cannot convey the tone of remarks and the physical action or body language accompanying them, nevertheless the appellate court can get the flavor of the trial proceedings from an extended reading of the transcript, which we have done.

The specific conduct which prompted the second citation occurred on June 8, 1983, during the making of an offer of proof at the court's behest outside the presence of the jury or a witness. The offer of proof concerned the alleged FBI attempt to destroy the Black Liberation movement and kill people in it, a matter the court had previously ruled as not relevant. The specific remarks Lumumba uttered were "[a]nother point is I would like some kind of ruling on why you won't let me do what you let them do and then have the audacity to sit on the bench and claim you are fair."[3]

---

2. Judge Duffy stated: "The cold record cannot convey the total disrespect shown by Mr. Lumumba's mocking, condescending actions and the querulous, acidic, baiting tone of voice used by him in addressing the court." *Shakur*, 570 F.Supp. at 348.

3. The entire offer of proof was as follows:

[Question by Mr. Lumumba]: You have had an opportunity, and this is the point I am trying to get at, in your work with the FBI, you have seen a lot of documents which relate to the black movement, isn't that right? You have seen a lot of them, right?

Mr. Litt: Objection.

The Court: Sustained.

Mr. Lumumba: Judge, I would like an offer of proof on this. I think this is very relevant, especially for this document.

The Court: We will do it outside the presence of the jury.

Mr. Lumumba: We can do it outside.

The Court: Okay, fine. Ladies and gentlemen, it's time for a break. Just leave that exhibit where it is, okay?

(Jury not present)

Mr. Lumumba: Okay, can I ask this question as an offer of proof? The jury is not around, Judge. You don't have to worry about the jury finding out how the FBI treated the black liberation movement.

The Court: If that's what we are getting into, it has no place in this trial.

Mr. Lumumba: Why has it no place in this trial? You are here prosecuting the black liberation movement. It has nothing to do with the way your government treated us in the past, right? It's insane.

The Court: Tell me what you are attempting to prove.

By Mr. Lumumba:

Q. Have you—

The Court: Step [d]own, Mr. Spriggle, and step outside. Tell me what you are trying to prove.

Mr. Lumumba: Fine. Let him go. Wait until he leaves. I don't want him to hear it anyway because he will probably lie.

(Witness left the courtroom)

Mr. Lumumba: The thing is that it is my belief that the document which is being entered into evidence, which you accepted into evidence for whatever reason, it doesn't talk about Brinks robberies or anything else, is a document which is totally consistent with documents which have pervaded the black liberation struggle since the time that the FBI has started killing different people in the movement, since the time that there was a manifest need for security, since the time that the black liberation movement has been

While a single isolated remark " 'must constitute an imminent, not merely a likely, threat to the administration of justice' " to be punishable as contemptuous, *see Eaton,* 415 U.S. at 698, 94 S.Ct. at 1229 (quoting *Craig v. Harney,* 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947), seen in the light of Lumumba's prior courtroom conduct, his remark amply justifies a finding of criminal contempt. In Judge Duffy's recited findings of contempt of September 6, 1983, as amended September 7, he quoted from the transcript other prior examples of Lumumba's conduct which support the inference that he was making a calculated insult to the judge. *Shakur,* 570 F.Supp. at 342–46. During the course of the trial Lumumba made the following comments to the court: "You're not concerned about whether he's telling the truth"; the judge had "granted every objection they made and overruled every one we made. Are you trying to be fair about this?"; "They don't need another prosecutor, Judge"; "Judge, is it possible that you could testify as the witness?"; "You haven't been fair at this point, why should we take it that you are trying to be fair now. This kind of silly sobbing, patronizing, condescending appeal to the press is ridiculous. There is no way in the world you have been fair"; "Anything that's come out of this trial has been a response to the ridiculous way that you have been trying to chill people since you first got here, but I will continue to represent this man." Judge Duffy also noted the following exchange:

> pa[t]roling in communities trying to stop crime and therefore have had necessity for rules of this nature.
>
> That being the case, I would like to point out through the specific document which you have suggested cannot come into evidence, which is almost identical in parts to this document, and through his knowledge of the documents which he may have examined, having been a person who has been in the FBI for 26 years during the period of time in which they have examined the whole files, the total files of various different movements, he can tell us that the principles in this document are not inconsistent with many of those other principles which come from groups which clearly had nothing to do with robbing Brinks trucks

MR. LUMUMBA: Why are you sustaining that objection, Judge? I thought I could inquire.

THE COURT: Why don't you look it up in the books?

MR. LUMUMBA: Well, which books were you referring to? Not the ones I have read. I probably finished higher in my law school than you did and they don't deal with that.

(Tr. 2281.)

MR. LUMUMBA [out of the presence of the jury]: Did they tell you that you had to tell the truth?

MR. LITT [the Government prosecutor]: Your Honor, among other things, could you ask Mr. Lumumba not to sit in the jury box while he asks questions?

THE COURT: Get out of there. Come on. Look, Mr. Lumumba, it doesn't bother me in the slightest bit, but your disrespect for this court is absolutely incredible.

MR. LUMUMBA: Well, Judge your disrespect for Black people is—

THE COURT: No, no. Get up and get back to where you were.

MR. LUMUMBA: You have been performing like an outstanding bigot.

THE COURT: Not in the slightest bit.

MR. LUMUMBA: That's what all bigots say.

THE COURT: Get out of the jury box.

MR. LUMUMBA: You have this little puppet on a string up on the stand and you don't want him asked questions no mat-

> and were totally overground political formations which were functioning in a way which was legal even by corrupt laws of the United States.
>
> So the point that I am trying to make here is this, that if they are allowed to issue a document which has prejudicial impact if not explained, then I have a right to go into it and to explain it through this witness. That's one point.
>
> Another point is I would like some kind of ruling on why you won't let me do what you let them do and then have the audacity to sit on the bench and claim you are fair.
>
> THE COURT: Look Mr. Lumumba, you have been held in contempt more than once and you are held in contempt again.

ter what the questions are and then you have the audacity to—

(Tr. 2283–84.) Finally, on June 8, 1983, just prior to his cited remarks, Lumumba called the judge "a disgusting bigoted partial joke."

Our search of the transcript reveals a few other examples of Mr. Lumumba's conduct, occurring prior to the second contempt citation:

THE COURT: Mr. Lumumba—

MR. LUMUMBA: When I get finished you can talk. When I get finished making my record.

THE COURT: I will talk when I want to, Mr. Lumumba.

. . . .

THE COURT: I will tell you what, Mr. Lumumba. You are just trying to bait me, and apparently you get some kind of pleasure out of that. But I don't really care.

MR. LUMUMBA: I am trying to squeeze some justice out of you. I am trying to squeeze some justice out of you. If you will just give a little bit of justice.

(Tr. 1477–78.)

MR. LUMUMBA: Can you explain the basis for that ruling for us, please?

THE COURT: No.

MR. LUMUMBA: You don't have a basis or you are just acting as if you don't know what we are talking about? Which one is it?

THE COURT: You are a graduate of law school, You look it up.

(Tr. 1616.)

THE COURT: Mr. Lumumba, please, be good enough to sit down and be quiet.

MR. LUMUMBA: The other point is that you talk about hearsay. You allow hearsay in, presumably, under some type of connection with conspiracy that has not been established yet and those things, I think, were inappropriate and we would look for a better performance from the court in the future.

(Tr. 1619.)

MR. LUMUMBA: In addition to that, I would object to the questions that the court asked. I think that the U.S. Attorney has enough people at the table to do their job. You don't have to help them, so those are the objections I would raise. Showing bias.

(Tr. 1725–26.)

MR. LUMUMBA: I object.

THE COURT: I don't care whether you object or not.

MR. LUMUMBA: I know you don't. You don't care about anything we do.

THE COURT: Sit down.

MR. LUMUMBA: Don't tell me to sit down. I haven't finished yet. I am telling you that we have [a] right to have argument on the matter.

THE COURT: Argument on what matter?

MR. LUMUMBA: You can't summarily excuse a juror without some argument.

THE COURT: Why not? Would you want to tell me how I can keep the juror here who is not going to get paid for four or five months?

(Tr. 1977.)

MR. LUMUMBA: I am just saying that if the people who are sitting out in the audience are laughing in this court, it may not be because we are doing anything that is a sham; they might suspect that the court's pretense to be objective—

THE COURT: Are we going through this nonsense again? I don't have to sit and listen to this nonsense any more. This is silliness.

(Tr. 2192.)

MR. LUMUMBA [to an informant witness]: Mr. Rison, you got a friend there in the judge. You feel pretty secure about that?

MR. LITT: Objection, your Honor.

THE COURT: That is the end of that. Mr. Stern, do you have any questions?

MR. LUMUMBA: I am not finished, Judge.

THE COURT: You keep it up and you will be finished.

MR. LUMUMBA: I am not finished yet. If you want to deprive my client of his hearing, you can do that. See—

THE COURT: I am not depriving your client of his hearing; I am depriving the audience of your showmanship. Why don't you back up where you belong? Don't get close to the witness.

MR. LUMUMBA: Are you nervous? Are you bothered?

THE COURT: You are not making me nervous.

MR. LUMUMBA: It should be all right.

THE COURT: Get back there.

MR. LUMUMBA: I thought you said when you were a lawyer, you walked around the courtroom everywhere.

THE COURT: Yes, I did, but I never came that close to a witness. Get back at the podium.

MR. LUMUMBA: No.

(Tr. 2263–64.)

[Question by Mr. Lumumba:] When was the last time you had used drugs before that day?

MR. LITT: Objection.

THE COURT: Sustained.

MR. LUMUMBA: Have you used any today?

MR. LITT: Objection.

THE COURT: Sustained.

MR. LUMUMBA: You want to hear from a witness and you don't even know whether he's on drugs, is that right?

MR. LITT: Objection.

MR. LUMUMBA: Is that your objective here?

THE COURT: Next question.

MR. LUMUMBA: You don't want to know whether the witness has been using drugs before he testified before you?

THE COURT: Next question.

MR. LUMUMBA: I want an answer to my question. That's the question to you.

THE COURT: Are you going to continue or are [you] going to be finished?

MR. LUMUMBA: I'm not finished. If you want to cut off my hearing, if you want to deprive my client of his hearing that's on you.

THE COURT: I'm not depriving your client of a hearing. You will be depriving your client.

MR. LUMUMBA: I'm not depriving my client of a hearing.

THE COURT: Look, counselor, I am he[re] to run a courtroom, not a classroom.

MR. LUMUMBA: When are you going to start running it?

(Tr. 2298–99.)

[Question by Mr. Lumumba:] So how much money is the FBI paying you for your testimony?

THE COURT: Sustained.

MR. LITT: Objection.

MR. LUMUMBA: Judge, you are very versatile. You make objections and sustain them.

THE COURT: Yes. Come on.

MR. LUMUMBA: But you only seem to work on one side, the prosecution. You don't work well on the defense side. What's the problem?

THE COURT: Come on. Do you have a question to ask?

MR. LUMUMBA: Well, have you received any money prior to coming here today for your testimony?

MR. LITT: Objection.

THE COURT: Sustained.

MR. LUMUMBA: What's wrong with that question, huh?

THE COURT: Next question.

MR. LUMUMBA: You're so smart, you can explain it, I know you can, come on. It's not relevant to you whether the witness don't know whether he's getting paid for the testimony.

THE COURT: Next question. Come on now.

(Tr. 2314–15.)

MR. LUMUMBA: I don't know what you think you are doing. You are trying to intimidate people. I am here trying a case where a man's life is at stake. You don't have enough little threats and intimidations to discourage me.

THE COURT: No threats or intimidations. I want to tell you something. My father used to tell me that you don't reprimand the village idiot when he is looking for attention.

(Tr. 2391.)

█ Lumumba concedes that the remarks for which he was ultimately held in contempt were not provoked by the judge's comments quoted above: "You look it up," and "Why don't you look it up in the books," or by his reference to "the village idiot," which Lumumba claims was a direct reference to him but which the court denied referred to Lumumba. The remarks indicate judicial annoyance with Lumumba, and the use of the term "village idiot" was unfortunate, even if, as Judge Duffy stated, he did not actually call Lumumba the village idiot. All three remarks, however, occurred more than five weeks before Lumumba's cited conduct, and thus that conduct can hardly be explained as provoked by the trial judge. Moreover, while it may be considered in extenuation of the offense and in mitigation of any penalty imposed, "impropriety on the part of the trial judge cannot justify or excuse contemptuous conduct." *Dellinger*, 461 F.2d at 401. *See also Seale*, 461 F.2d at 362; *United States v. Offutt*, 145 F.Supp. 111, 114–115 (D.D.C. 1956), *aff'd as modified*, 247 F.2d 88 (D.C. Cir.), *cert. denied*, 355 U.S. 856, 78 S.Ct. 85, 2 L.Ed.2d 64 (1957); *cf. Sacher*, 343 U.S. at 39, 72 S.Ct. at 469 (Frankfurter, J., dissenting). Because Lumumba's cited conduct, in the context of his numerous insults and his judge-baiting, disrupted the orderly administration of the trial, and because he clearly intended such (whether or not as part of a "political" trial strategy), the second citation is affirmed.

█ Lumumba argues that the admission of the transcript of the trial into evidence in his contempt hearing before Judge Sweet was error. This evidence was admitted under Fed.R.Evid. 902(4) as a certified copy of a public record. It is as such "prima facie a correct statement" of the testimony. 28 U.S.C. § 753(b) (1982). Lumumba offers nothing to rebut this presumption.

█ Lumumba also claims that the decision below should be reversed because Judge Sweet denied Lumumba's motion to call Judge Duffy and the Assistant United States Attorneys who represented the Government at the trial as witnesses at his hearing. Judge Sweet's action, however, was proper. Lumumba was entitled not to a "full-blown trial," but only to "a reasonable opportunity to defend or explain his actions or present arguments in mitigation." *Lumumba*, 741 F.2d at 17. *See Taylor v. Hayes*, 418 U.S. 488, 499, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974); *Offutt v. United States*, 232 F.2d 69, 72 (D.C.Cir.), *cert. denied*, 351 U.S. 988, 76 S.Ct. 1049, 100 L.Ed. 1501 (1956).

█ In addition, Lumumba asserts that Judge Sweet violated this court's prior ruling by acknowledging that he could not disregard entirely Judge Duffy's findings of contempt. Judge Sweet had the candor to say, perhaps inadvisedly, "[w]ere I to state that I have totally disregarded Judge Duffy's conclusions, such a statement would not be credible. I have, however, sought to view the issue as best I can solely from the written record and the testimony presented to me." 603 F.Supp. at 919. We agree with the Government that the comment is commendable for its candor and, as we read Judge Sweet's opinion, even while he was criticizing the previous opinion of this court ("I continue to believe that this remand was not necessary," *id.* at 920), he nevertheless made independent findings as to both citations of contempt and thus he acted in compliance with this court's earlier decision.

Judgment affirmed.