UNITED STATES of America

v.

**Chokwe LUMUMBA, Defendant.**

**No. (SSS) 83 Cr. 312 (RWS).**

United States District Court,
S.D. New York.

Nov. 17, 1983.

Rudolph W. Giuliani, U.S. Atty., S.D. New York, New York City, for United States of America by Stacey J. Moritz, Robert S. Litt, Asst. U.S. Attys., New York City, of counsel.

Jeffrey Edison, Detroit, Mich., Alton Maddox, New York City, Harry Davis, James W. McGinnis, Paul Curtis, Thomas Binion, Detroit, Mich., Michael Warren, Brooklyn, N.Y., for defendant.

OPINION

SWEET, District Judge.

Prior to sentence defendant Chokwe Lumumba ("Lumumba") has filed a "Motion in Opposition to Contempt Citation" and a "Motion to Dismiss the Contempt Charges." The court will consider them as a single motion to challenge his criminal contempt conviction and for the reasons stated below will deny the motion.

The Honorable Kevin T. Duffy, United States District Judge for the Southern District of New York, presided over the five-month RICO conspiracy trial of *United States v. Shakur*, 543 F.Supp. 1059. Lumumba, co-counsel for defendant Bilal Sunni-Ali, was held in contempt on two occasions during the trial, April 13, 1983 and June 8, 1983. On September 6, 1983, Judge Duffy entered a memorandum and order setting forth the events giving rise to the summary criminal contempt convictions entered under Fed.R.Crim.P. 42(a). On September 7, 1983, Judge Duffy amended his September 6 order by referring the case to the Assignment Committee for transfer "for further proceedings including the determination of the appropriate punishment to be imposed." The Assignment Committee directed the customary selection by lot from the appropriate criminal assignment wheel.

The court initially set this case for sentencing on October 27, 1983. Lumumba's Motion in Opposition to Contempt Citation having been filed on October 20, 1983, the court instead heard the motion. Immediately prior to the hearing, Lumumba presented his Motion to Dismiss the Contempt Charges. At the conclusion of the October 27 hearing, the court reserved its decision and, upon consulting all the attorneys involved, permitted the Government and the defendant to submit additional memoranda on November 2 and November 10, respectively. The Government has made such a submission and, as of the date of this decision, the defendant has not.

Lumumba's challenge of the contempt convictions has two prongs. First, he maintains that Rule 42(a) summary disposition was employed when notice and a hear-

ing under Rule 42(b) should have been used, and he urges this court to vacate the conviction and initiate a new contempt proceeding utilizing the procedures of Rule 42(b) including trial by jury. Second, Lumumba maintains that, as a Vice President and Minister of Justice for the Provisional Government of the Republic of New Africa ("RNA"), he is immune from criminal prosecution. He concludes that Judge Duffy was without jurisdiction to hold him in contempt and that this court is without jurisdiction to sentence him.

■ The court is not in a position to review Judge Duffy's choice of the Rule 42(a) procedure. Lumumba argues that the September 7, 1983 amended order suggested that Judge Duffy had recused himself and had ordered that the subsequent court hold a *de novo* hearing pursuant to Rule 42(b). That argument lacks merit. The amended order reads, in pertinent part:

> The conduct reflected both in the two contempt specifications and the total trial transcript was clearly contemptuous. Accordingly, pursuant to the power vested in me by 18 U.S.C. § 401 I hereby hold Mr. Lumumba in contempt of court. Pursuant to Rule 18 of the Rules of this Court the matter is referred to the Assignment Committee for transfer by lot for further proceedings including the determination of the appropriate punishment to be imposed on the respondent Chokwe Lumumba for the specified findings of contempt.

There is no question that Judge Duffy held Lumumba in contempt and did not intend the transferee court to retry Lumumba's conduct.

Furthermore, this court cannot discover a basis for reviewing Judge Duffy's decision to proceed by summary disposition, and none has been cited, not surprisingly, given the somewhat unusual procedural route the case travelled to reach this court.[1] However, Fed.R.Crim.P. 25(b) provides a useful analogue to assist this court in determining its role in this case. The rule reads, in pertinent part:

> If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties . . . .

The imposition of sentence by a successor judge has been permitted under Rule 25. *See, e.g., Government of Canal Zone v. O'Calagan*, 580 F.2d 161, 164–65 (5th Cir.1978), *cert. denied*, 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978); *United States v. McCallie*, 554 F.2d 770, 774 (6th Cir.1977); *United States v. Bryant*, 430 F.2d 237, 240–41 (8th Cir.1970). The order of Judge Duffy, the briefs filed on behalf of Lumumba, the presentence report, the numerous letters received, and the arguments of counsel have educated the court

---

**1.** Fed.R.Crim.P. 42 provides the appropriate procedure for the prosecution of criminal contempt. It distinguishes between summary disposition and disposition upon notice and hearing. While the latter is preferred for obvious reasons, see *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974), the former is sometimes necessary to immediately vindicate the dignity of the court, see *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 394–95, 69 L.Ed. 767 (1925). Rule 42(b), covering disposition upon notice and hearing, permits the judge to disqualify himself from presiding at the trial or hearing when the contempt charged involves disrespect to or criticism of the judge.

Although there is no readily apparent authority in Rule 42(a) for assigning a case to another judge for sentencing, by letter of September 6,

1983 to Judge Duffy the Assistant United States Attorneys handling the case noted that *Taylor, supra*, might justify the transfer of the case. In *Taylor*, transfer was ordered where the trial judge became "embroiled in a running controversy with the petitioner", and the Supreme Court set aside the trial court's summary contempt judgment and ordered it to proceed by notice and hearing. The government attorneys here suggested that the interest of preserving the appearance of justice might justify a referral for sentence in the instant case. Judge Duffy obviously adopted the suggestion of the government attorneys, but clearly did not intend to apply the *Taylor* holding as to the judgment which he had imposed.

In any case, Judge Duffy's decisions are beyond the scope of this coordinate court's power at this stage in the proceeding.

on the facts of the case sufficiently to enable it to proceed with the sentencing.

■ However, Rule 25 does not justify this court, as a successor court, to sit in appellate review of Judge Duffy's actions. *See United States v. Sisk,* 629 F.2d 1174, 1179 (6th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). The imposition of sanctions on this criminal contempt conviction transforms it into a final judgment under 28 U.S.C. § 1291, ripe for review by the Second Circuit Court of Appeals. *See I.B.M. v. United States,* 493 F.2d 112, 114 (2d Cir.1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). Lumumba will have ample opportunity to challenge his conviction in the proper forum.

With respect to Lumumba's claim of immunity, he cites only the authority of 18 U.S.C. §§ 112, 1116. These sections involve the assault on or murder of foreign officials and are obviously irrelevant to the issue at hand. The Government deals with Lumumba's claim of immunity by referring to the Vienna Convention on Diplomatic Relations ("the Treaty"), April 18, 1961, 23 U.S.T. 3227 [2] and the corresponding U.S. statute, 22 U.S.C. §§ 254a–254e.

■ Lumumba has not sought diplomatic immunity under the Treaty nor would it be possible for him to qualify for such immunity. Article 4(1) of the Treaty provides: "The sending State must make certain that the *agrément* [acceptance] of the receiving State has been given for the person it proposes to accredit as head of the mission to that State." The status of others as diplomatic agents hinges on the receiving State accepting the head of the mission. In the United States, recognition by the Department of State is necessary to establish diplomatic status. *Restatement of Foreign Relations Law* (Tentative Draft No. 4) § 461 commentary at 30 (1983).

■ The origins of the R.N.A., its organizing conventions, and its claim to the terri-

tory presently consisting of the states of Mississippi, Alabama, Louisiana, Georgia, and South Carolina have been set forth in argument on this motion. The court also notes that United States agencies, including the Federal Bureau of Investigation, have investigated the R.N.A. No fact alleged or argued constitutes Department of State acceptance of immunity status for Lumumba or recognition of the R.N.A. or its Provisional Government. Any other conclusion would be a shock to common sense and the citizens of the states claimed as R.N.A. territory. As a committee of concerned citizens, a nascent political party, or a revolutionary movement, the R.N.A. is not an entity whose officials are entitled to immunity. *See In re Grand Jury Subpoena,* No. M–11–188 slip op. at 5 (S.D.N.Y. January 28, 1982), *aff'd,* 697 F.2d 290 (2d Cir.1982).

For the reasons stated above, the motion is denied. Sentencing will occur on November 28, 1983 at 9:30 a.m.

IT IS SO ORDERED.

---

**2.** The protective provisions of the Treaty appear in Articles 29 and 31. Article 29 provides: "The person of a diplomatic agent shall be inviolable. He shall not be liable to any form of arrest or detention."

Article 31 establishes that: "A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving state."