**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Chokwe LUMUMBA,**
**Defendant-Appellant.**

**No. 1222, Docket 83–1415.**

United States Court of Appeals,
Second Circuit.

Argued May 15, 1984.

Decided July 27, 1984.

Anthony Adams, Detroit, Mich. (Edison, Davis & Lumumba, Detroit, Mich., Alton Maddox, New York City, James W. McGinnis, Paul Curtis, Thomas Binion, Detroit, Mich., Michael Warren, Brooklyn, N.Y., of counsel), for defendant-appellant.

Stacey J. Moritz, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Robert S. Litt, Asst. U.S. Atty., New York City, of counsel), for plaintiff-appellee.

Mardi Crawford, Detroit, Mich., for Michigan and National Lawyers Guild, Detroit Chapter, amicus curiae.

Betty Lawrence Bailey, New York City (Margaret L. Ratner, Margaret A. Burnham, New York City, of counsel), for National Conference of Black Lawyers, Center for Constitutional Rights, National Lawyers Guild, amici curiae.

Before CARDAMONE, PRATT and FRIEDMAN,* Circuit Judges.

* Honorable Daniel M. Friedman, United States
 Circuit Judge for the Federal Circuit, sitting by

CARDAMONE, Circuit Judge:

■ This appeal is from a judgment of conviction for criminal contempt. During the course of a lengthy criminal trial a trial judge cited defendant's counsel for contempt on two separate occasions. At the conclusion of the trial, the district court judge certified that under Fed.R.Crim.P. 42(a) the conduct constituting these contempts was committed in his presence, and then proceeded to hold counsel in contempt pursuant to 18 U.S.C. § 401. He referred sentencing to another judge under Rule 18 of the Rules of Division of Business Among Southern District Court Judges. The principal issue raised is whether due process requires that a lawyer cited for criminal contempt for conduct occurring during trial must—before being finally adjudicated in contempt at the end of the trial—have notice and an opportunity to be heard. Since the answer to this question is "yes," and appellant was not afforded such due process rights, the judgment of conviction appealed from must be reversed.

I

Chokwe Lumumba, an attorney, has appealed from a judgment of conviction for criminal contempt entered on September 6, 1983 in the United States District Court for the Southern District of New York, (Duffy, J.). Lumumba was cited by Judge Duffy for contempt for his conduct while representing defendant Bilal Sunni-Ali during a five month trial against Sunni-Ali and ten co-defendants arising from the October 20, 1981 armed robbery of a Brinks truck in Rockland County, New York, during which a Brinks guard and two police officers were murdered. Lumumba also challenges the sentence imposed on him on November 28, 1983 by United States District Court Judge Robert W. Sweet, to whom his sentencing was assigned by lot.

The first contempt citation occurred on April 13, 1983 when, midway through the voir dire selection of the jury, attorney

designation.*

Lumumba made his first appearance on behalf of Sunni-Ali. Lumumba immediately moved to strike the jury panel. A similar motion made by another attorney had been denied just moments earlier. Judge Duffy also denied Lumumba's motion and advised him to put it in writing. Appellant refused to heed this ruling, and persisted in his efforts to make the motion orally. The ensuing exchange precipitated numerous accusations by Lumumba against Judge Duffy. Later Lumumba interrupted questioning of a prospective juror in order to raise certain other motions. When he repeatedly refused to "be quiet and sit down," in direct defiance of a court order to do so, Judge Duffy excused the venireman and held Lumumba in criminal contempt. He made no further outbursts during the remainder of the jury selection.

The second contempt citation was issued on June 8, 1983 outside the presence of the jury. Judge Duffy had directed Lumumba to make an offer of proof with respect to his cross-examination of a government witness. Upon concluding his offer of proof, appellant remarked to the court: "Another point is I would like some kind of ruling on why you won't let me do what you let them do and then have the audacity to sit on the bench and claim you are fair." Judge Duffy responded: "Look Mr. Lumumba, you have been held in contempt more than once and you are held in contempt again."

There were several other eruptions during the trial and insults such as calling the judge an "outstanding bigot" and "a racist dog" were directed by appellant at the bench. But the two recited instances on April 13 and June 8 were the only occasions when Lumumba was cited for contempt. On September 6, 1983, following acquittal of Bilal Sunni-Ali on all counts charged against him, Judge Duffy summarily convicted Lumumba of criminal contempt pursuant to Fed.R.Crim.P. 42(a) and 18 U.S.C. § 401. In a 36 page memorandum and order, the district court set forth the bases for the two contempt adjudications and recited numerous other examples of Lumumba's misbehavior.

The judgment for criminal contempt having been entered, sentencing came before Judge Sweet. Lumumba's attorneys filed motions seeking to have the contempt citations dismissed or, in the alternative, to have a hearing pursuant to Fed.R.Crim.P. 42(b), in order to contest whether Lumumba's conduct was contemptuous. Judge Sweet denied these motions on November 17, 1983, 578 F.Supp. 100 stating that he lacked the authority to retry the merits of the conviction or to review Judge Duffy's choice of the Rule 42(a) summary procedure. Accordingly, he proceeded to sentence Lumumba to three years probation that included 350 hours of community service to be performed during the first 15 months of that probation.

On appeal Lumumba raises four main issues: first, he claims that as the Vice President and Minister of Justice of the Provisional Government of the Republic of New Afrika, he is not subject to the jurisdiction of the United States District Courts; second, Lumumba contends that Judge Duffy erred in applying the summary contempt procedure of Rule 42(a) after waiting until the conclusion of trial to issue the contempt adjudication; third, and closely related to the previous point, is the allegation that the summary procedure deprived Lumumba of his constitutional due process right to notice and a hearing; finally, Lumumba assails his sentence as being excessive and an abuse of discretion. We consider those arguments in order.

## II

Lumumba's claim of immunity from prosecution is premised on his proclaimed status as "Vice President and Minister of Justice of the Provisional Government of the Republic of New Afrika." According to the appellant's brief, the Republic of New Afrika is the "Nation of Afrikans born in North America as a consequence of ... slavery." It encompasses five southern states—Alabama, Georgia, Louisiana, Mississippi and South Carolina—and is an independent state. Lumumba also asserts that his defense of Bilal Sunni-Ali was un-

dertaken under color of his position as Minister of Justice of the Republic. Since Article III, Section 2 of the United States Constitution vests in the Supreme Court original jurisdiction over "Cases affecting Ambassadors, other public Ministers and Consuls," Lumumba argues that the district court was without authority to hold him in contempt or sentence him.

 The district court properly rejected Lumumba's argument and asserted its jurisdiction. As Judge Sweet observed, the Vienna Convention on Diplomatic Relations, April 18, 1961, Art. IV, 23 U.S.T. 3227, and the corresponding statute, 22 U.S.C. §§ 254a–254e, premise diplomatic immunity upon recognition by the receiving state. That is to say, neither Lumumba nor anyone else is able unilaterally to assert diplomatic immunity. Such status only exists when there is recognition of another state's sovereignty by the Department of State. In other words, recognition by the executive branch—not to be second-guessed by the judiciary—is essential to establishing diplomatic status. *Restatement (Third) of Foreign Relations Law of the United States* § 461 Commentary at 30 (Tent. Draft No. 4, 1983). The United States Department of State has not recognized the Republic of New Afrika or its Provisional Government. Similarly, it has never granted immunity status to Lumumba. Thus, Lumumba is precluded from asserting sovereign immunity. *See United States v. James*, 528 F.2d 999, 1016 (5th Cir.), *reh. denied*, 532 F.2d 1054, *cert. denied*, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976).

 Even if by a stretch of the imagination one could assume the existence of such status, it was waived in this case. Lumumba, a member of the Michigan bar, freely chose to appear *pro hac vice* in the United States District Court to represent a criminal defendant. It would be anomalous to believe that he could participate in a trial as counsel, disrupt it by insulting a respected judge, and impede the trial process without subjecting himself to the district court's contempt procedures.

## III

The more troublesome issue in this case concerns the district court's application of the summary contempt procedures *after* the trial had been completed and its failure to grant Lumumba a hearing. Judge Duffy purported to act pursuant to Fed.R. Crim.P. 42(a), which states in pertinent part: "A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." Clearly, therefore, Judge Duffy could have sentenced Lumumba on the spot if the circumstances warranted such immediate action. *Codispoti v. Pennsylvania*, 418 U.S. 506, 512–15, 94 S.Ct. 2687, 2691–2692, 41 L.Ed.2d 912 (1974). Yet, apparently he believed that such was unnecessary and, wishing to avoid the potential disruption of the trial and prejudice to the defendant that would have followed from Lumumba's immediate incarceration, postponed the ultimate disposition. *See Weiss v. Burr*, 484 F.2d 973, 982 n. 15 (9th Cir.1973), *cert. denied*, 414 U.S. 1161, 94 S.Ct. 924, 39 L.Ed.2d 115 (1974). We turn to consider the law of criminal contempt.

Blackstone has set forth the ancient law of contempt as it existed in the common law of England. Whether it was against the courts of justice involving violence, where the punishment was death, or whether it was merely using "threatening or reproachful words to any judge sitting in the courts," where the punishment was large fines and imprisonment, contempt constituted a disturbance of public justice. 4 W. Blackstone, *Commentaries* \*124–26. The principle was early established in American jurisprudence that contempt, like all punishments, should be " 'the least possible power adequate to the end proposed.' " *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821).

 Drawing on this combined common law history in an early case, the Supreme Court held up two rules for consideration. One states that a sentence pronounced

without notice and an opportunity to be heard " 'is not entitled to respect in any other tribunal' "; the other holds that from time immemorial the authority of the tribunal must be upheld because upon its existence all other rights depend. *Ex Parte Terry*, 128 U.S. 289, 307, 9 S.Ct. 77, 80, 32 L.Ed. 405 (1888) (quoting *Windsor v. McVeigh*, 93 U.S. 274, 277, 23 L.Ed. 914 (1876)). Hence, contempts committed in the face of a court are to be instantly punished without proof or examination. *Id.* For those contempts committed at a distance where the court's knowledge is imperfect, there is no instant punishment. But rather, an order to show cause should issue as to why contempt should not issue against the person charged. *Id. See Savin, Petitioner*, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1889). Thus, except for those contempts committed in the presence of the court, due process requires that the accused "be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation." *Cooke v. United States*, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925). To these two different situations two different rules applied. In the former, due process rights were sacrificed for order in the court and the dignified maintenance of its processes; in the latter, where this interest need not be vindicated, the least possible power to accomplish the ends perceived consists of a show cause or other notice to the accused with a chance for him to be heard.

The circumstances in the instant case present a mixture of the two patterns. In this amalgam the contempt charged occurred in the face of the court, but the adjudication and punishment were deferred. The Supreme Court considered a somewhat similar situation in *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). In *Sacher* the Court concluded that the summary punishment power conferred by Rule 42(a) permits a trial judge, in his discretion, to defer its exercise until the trial's completion, without loss of his power to punish summarily. *Id.* at 11, 72 S.Ct. at 456. Presumably, Judge Duffy relied on this view of his power. The government surely does in its brief on this appeal. Nonetheless, we conclude that such is not the present rule and that *Sacher* has limited vitality as precedent, even though it has not been expressly disavowed.

From the beginning it is evident that the Supreme Court had only permitted summary punishment as an immediate necessity to uphold a tribunal's authority. Where punishment is deferred until another day, the reason for the exception that denied due process disappears. Thus, it comes as no surprise to see that the underpinnings of *Sacher* were quickly eroded. In *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954) the Court in setting aside a contempt conviction exercised its supervisory authority and directed that judges not sit in judgment themselves upon misconduct of counsel charged with contempt. At various times throughout this five month trial Lumumba shot arrows of insult at the trial judge; we assume that some of these arrows stung, leaving their barbs under the skin of even as experienced a trial judge as Judge Duffy. Failing to recognize that there could be some residue of aggravation on the judge's part would be unrealistically to hold that trial judges are not also human. Therefore, the rationale for not permitting judges to sit in judgment on themselves is that not only is justice to be done, but it is also to appear to be done. In 1968 the Supreme Court held in *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, that in light of its previous holdings the rule allowing criminal contempt to be constitutionally tried without a jury needed to be re-examined. It concluded that where the penalty exacted is serious (there, two years) right to trial by jury constitutionally attached. *Id.* at 210–11, 88 S.Ct. at 1486–1487. Later, in *Mayberry v. Pennsylvania*, 400 U.S. 455, 463–64, 91 S.Ct. 499, 504, 27 L.Ed.2d 532 (1971), a unanimous Court emphasizing due process requirements held that where the trial judge fails to act "the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place." Since the

state court judge failed to do so, the attorney's contempt conviction was reversed and the case remanded for trial before another judge.

Finally, we examine *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), which is nearly indistinguishable from the instant case. In that case a Kentucky trial judge held counsel for defendant—on trial for the murder of two police officers—in contempt on nine different occasions during the trial. On each occasion the judge told counsel that he was in contempt of court. At the conclusion of the trial, the judge imposed sentence for each contempt. When the lawyer attempted to speak, the trial judge refused to permit him to respond. The Supreme Court reversed and remanded the case to another trial judge. Where conviction and punishment are delayed, the Court noted that it is much more difficult to argue for preservation of the court's dignity. It went on to hold that "before an attorney is finally adjudicated in contempt and sentenced after trial for conduct during trial, he should have reasonable notice of the specific charges and opportunity to be heard in his own behalf." *Id.* at 498–99, 94 S.Ct. at 2703. *See also Codispoti v. Pennsylvania*, 418 U.S. at 515, 94 S.Ct. at 2692; *Groppi v. Leslie*, 404 U.S. 496, 502, 92 S.Ct. 582, 586, 30 L.Ed.2d 632 (1972); Note, *Procedures for Trying Contempts in the Federal Courts*, 73 Harv.L.Rev. 353, 362–63 (1959).

Justice Rehnquist, for one, finds the holding in *Taylor* "squarely contrary to the holding in *Sacher*," *Codispoti v. Pennsylvania*, 418 U.S. at 525, 94 S.Ct. at 2707 (Rehnquist, J., dissenting), and, while a factual distinction between the two cases does exist, we believe it lacks substance. In *Sacher*, unlike *Taylor*, the lawyers held in contempt were given an opportunity to speak and even though it came after sentence, the trial judge, it is said, could have modified his holding had the explanation proved persuasive. *See Groppi v. Leslie*, 404 U.S. at 506 n. 11, 92 S.Ct. at 588 n. 11. Argument by way of defense and mitigation after sentence is akin to closing the barn door after the horse has escaped; it is a bit late. Regardless of that, here there was no opportunity for counsel to address the charges against him either before or after the adjudication of contempt by Judge Duffy. Further, whereas Judge Sweet did conduct hearings in connection with sentencing, he expressly disclaimed any authority to modify or even consider the conviction itself. Hence, on any view, the judgment of conviction must be reversed.

IV

Because we have determined that Lumumba is entitled to be heard on his allegedly contemptuous behavior and such involves reconsideration of his sentence as well, we need not reach the questions Lumumba raises as to whether he was in contempt and whether the penalty imposed was excessive.

The judgment of criminal contempt is reversed and the case remanded to the district court (Sweet, J.) for disposition upon notice and hearing, as set forth in Fed.R.Crim.P. 42(b). On remand, the district court need not hold a full-blown trial, but Lumumba should be allowed a reasonable opportunity to defend or explain his actions or present arguments in mitigation. *See Taylor v. Hayes*, 418 U.S. at 499, 94 S.Ct. at 2703.