UNITED STATES of America,

v.

Chokwe LUMUMBA, Defendant.

No. 83 Cr.Misc. 1 P. 646 (RWS).

United States District Court,
S.D. New York.

Feb. 21, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. New York City, for United States of America; Stacey Moritz, Asst. U.S. Atty., New York City, of counsel.

Edison, Davis & Lumumba, Detroit, Mich., for defendant; Harry Davis, Jeffrey Edison, Detroit, Mich., of counsel.

## OPINION

SWEET, District Judge.

This proceeding is before the court on remand following a reversal of a contempt conviction and sentence imposed upon Chokwe Lumumba ("Lumumba"), a lawyer, arising out of his conduct during the trial of *USA v. Shakur, et al.*, 543 F.Supp. 1059 (1982) (the *"Brinks* case") in which Lumumba successfully defended his client, Bilal Sunni-Ali ("Sunni-Ali"). 741 F.2d 12. It raises critical issues concerning the control of the trial process, the role of defense counsel, and the allocation of the responsibility for

review. Upon the findings and conclusions set forth below, a judgment of conviction under Fed.R.Cr.P. 42(b) will be entered.

The court has been directed on remand to conduct this proceeding, something less than "a full-blown trial," to permit Lumumba a reasonable opportunity to defend or explain his actions or present arguments in mitigation "in connection with a criminal contempt which the Honorable Kevin T. Duffy found to have been committed in the course of the *Brinks* case." Motions with respect to the proceeding were heard on October 19 and December 21, 1984 and opinions were filed on November 26, 1984, 598 F.Supp. 209, and January 3, 1985 and evidence was presented during the week of January 28, 1985 and on February 4, 1985. On the entire record, I find that contempts were committed as found by Judge Duffy and that Lumumba's defense, explanation, and mitigation are unavailing.

**Prior Proceedings**

The *Brinks* trial lasted from April 4 to September 4, 1983. Six defendants were charged with serious crimes, ranging from conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* to murder in the commission of an armed robbery. Five of the six were found guilty of certain of the charges. Lumumba's client, Sunni-Ali, was acquitted. The transcript consists of over 12,000 pages.

Judge Duffy found Lumumba in contempt on two occasions during the trial, the first on April 13, during voir dire, and the second on June 8, during colloquy concerning the admissibility of certain evidence. In between these two findings there were numerous occasions when statements were made by Lumumba which Judge Duffy noted after the trial and which the government has characterized as disruptive. *See Memorandum and Order* of Judge Duffy, filed September 6, 1983. Judge Duffy's *Memorandum and Order, supra,* set forth the events justifying the contempt citations and certified, pursuant to Fed.R.Crim.P. 42(a), that the events took place in his presence.

Following the filing of his memorandum and order, which by its terms constituted a conviction, Judge Duffy declined to sentence Lumumba, and the proceeding was assigned to me for that purpose. A hearing in connection with the sentence was held on October 27 and October 28, 1983 during which there was an opportunity for the presentation of mitigating factors, in the nature of a right of allocution, including a statement by Lumumba. Motions to dismiss and set aside the contempt conviction were heard and denied on November 17, 1983. 578 F.Supp. 100. On November 28, 1983 the imposition of sentence was suspended on both counts. Lumumba was placed on probation for three years and a condition of probation was the performance of 350 hours of community service during the first fifteen months of the probationary term.

An appeal was taken and in an opinion of July 27, 1984 the Court of Appeals reversed the conviction and remanded for further proceedings, stating:

> The principal issue raised is whether due process requires that a lawyer cited for criminal contempt for conduct occurring during trial must—before being finally adjudicated in contempt at the end of the trial—have notice and an opportunity to be heard. Since the answer to this question is "yes," and appellant was not afforded such due process rights, the judgment of conviction appealed from must be reversed.

*USA v. Lumumba,* 741 F.2d 12, 13 (2d Cir.1984).

Pretrial hearings were held on October 19 and December 21, 1984, and motions relating to the scope of the remand were heard and decided in memoranda filed on November 26, 1984 and January 3, 1985.

The mandated hearing took place from January 28 to February 4, 1985. The government introduced the transcript and rested. The defense called Lumumba, William Kunstler, a well-known lawyer with extensive experience as defense counsel in difficult cases, John C. Brittain, a professor

of law with a distinguished record including the defense of black defendants in Mississippi in the early 1970's, the Honorable Dalton Roberson, a judge of the Recorders Court of Wayne County, State of Michigan, Gloria House, a professor of humanities at Wayne State University, and Victor Goode, an instructor at the City University School of Law in Queens and a former national director of the National Conference of Black Lawyers. In addition, an affidavit of Lynne Stewart, a co-counsel with Lumumba in the *Brinks* case, submitted at the time of the prior sentencing, was introduced over the objection of the government, which was not provided an opportunity for cross-examination of the witness.

### The Circumstances of the Trial

The *Brinks* case had received wide publicity and by virtue of the nature of the charges and the number of defendants, and the pretrial proceedings, it was anticipated to be a long and arduous trial. Because of information received by the government, the security of the witnesses and the trial process was of concern, and persons entering the courtroom were searched. Marshals were also present throughout the trial. Indeed, a system had been devised for the making of objections by pressing a button which would turn on a light at the bench. The system was never employed.

The pretrial proceedings had included an effort to disqualify Lumumba from serving as counsel to Sunni-Ali's spouse and a denial of his application for compensation under the Criminal Justice Act. Lumumba, a member of the Michigan bar since 1976 and an experienced lawyer who has participated in some eighty criminal jury trials, was admitted *pro hac vice.*

Lumumba viewed the *Brinks* case as a political trial, which he and the witnesses he presented defined as a trial in which the defendants were charged as a consequence of their race, their political beliefs, and their associations, in addition to the more formal charges contained in the indictment. Both Lumumba and his client were supporters of the Republic of New Africa, ("RONA"), the tenets of which were considered in this court's opinion of November 17, 1983. Lumumba had participated in other trials which he considered political, and at the time of the *Brinks* case was the Minister of Justice of RONA. He believed that his advocacy in such a case had to be vigilant, zealous, and active. Lumumba was the only black lawyer serving as defense counsel.

### The First Contempt

On April 13, the first day of the trial, the court was conducting an individual voir dire of the jurors in the courtroom. The court had determined that for security reasons the names and addresses of the jurors would not be revealed. Lumumba entered the courtroom after the proceedings had commenced and observed from outside the well of the court until a recess was declared, after which he joined the counsel table. While Lumumba was observing from the back, an issue arose concerning press reports about the jury's anonymity as a ground for disqualification. Jesse Berman, another defense counsel, rose to press the court on the subject, urging that all the jurors be questioned in greater detail on the subject. Berman's objections were overruled, (Tr. at 832). Shortly thereafter, Lumumba joined other defense counsel at counsel's table. (Tr. 849). Soon thereafter defense counsel Stern moved to challenge the entire panel, a motion that was denied. (Tr. 867).

Immediately thereafter, Lumumba rose and moved to discharge the entire jury panel, as had Stern. *Id.* Judge Duffy denied the oral motion, advising Lumumba to put the motion in writing and stating that the written motion would be made a part of the record. The court had required all defense counsel to adhere to this procedure, including the attorney who addressed the court immediately before Lumumba. Nonetheless, Lumumba persisted in his effort to make his motion orally. (Tr. 867–69). When Judge Duffy attempted to move on to the peremptory challenges, Lumumba accused him first of unwillingness to hear the defendants' contentions and then of "tainting" and "polluting" the jury.

Shortly after those remarks, Lumumba addressed the court again, this time contending that Judge Duffy was precipitate in excusing a black prospective juror who stated she could not fairly and impartially decide the case, and claiming that the court's prompt excusal of the juror was inconsistent with its handling of white veniremen. (Tr. 886–87). When the District Court noted that Lumumba had not been present for any of the preceding voir dire and ordered him to be seated and cease further argument, Lumumba refused and insisted he had other "appropriate" motions he wished to make immediately. The following interchange occurred:

THE COURT: Mr. Lumumba, sit down. Mr. Lumumba, I said sit down.

MR. LUMUMBA: I know your courtesy is a little better than that.

THE COURT: Sit down, Mr. Lumumba.

MR. LUMUMBA: That's the way you give dogs and children instructions. I had some other motions I want to make at this time.

THE COURT: Sit down.

MR. LUMUMBA: You are denying my motion before you hear them?

THE COURT: Yes.

MR. LUMUMBA: Is that what you are doing?

THE COURT: I am telling you right now to sit down.

MR. LUMUMBA: Are you denying my motions before I make them?

THE COURT: I am not hearing motions right now.

MR. LUMUMBA: These are appropriate before the next juror comes in.

THE COURT: I'm not hearing them now.

MR. LUMUMBA: I have some appropriate motions I want you to hear before the next—

THE COURT: Now now.

MR. LUMUMBA: You can explain to me something I missed, why you operate this courtroom in such a fashion that you don't even [hear] motions before you tell people summarily to sit down.

THE COURT: Sit down, Mr. Lumumba.

MR. LUMUMBA: That's the way why you treat people in this courtroom as if they were children or animals? If I were to respond to you in some type of derogatory way, you would be offended.

THE COURT: Mr. Lumumba—

MR. LUMUMBA: Mr. Lumumba is appropriate. If you want to ask me to do something, you can say please or something like that.

THE COURT: Sit down.

MR. LUMUMBA: When will we be able to hear motions? That's the question at hand.

THE COURT: I will let you know.

MR. LUMUMBA: Can you let me know now?

THE COURT: No. You will have lots of time to prepare.

MR. LUMUMBA: Pardon?

THE COURT: You'll have time to prepare.

Lumumba's third disruption of the proceedings—which occasioned the initial contempt citation—also occurred during his first day in court. In direct contravention of Judge Duffy's order that the District Court alone would conduct voir dire, Lumumba interrupted questioning of a prospective juror and attempted to continue an argument on an issue upon which the court had already ruled. Lumumba did not accede to the order of the court to sit down, and, in front of the venireman, again accused the court of being unwilling to listen to the defendants' contention. In following terms Judge Duffy removed the venireman from the courtroom and held Lumumba in criminal contempt.

MR. LUMUMBA: Judge, we have to deal—

THE COURT: Mr. Lumumba, this is a court order, Mr. Lumumba, that I am making right now for you to be quiet and sit down.

MR. LUMUMBA: Well, judge, I'm pointing out—

THE COURT: If you disobey that order—

MR. LUMUMBA: Are you trying to put me under an order so you don't have to deal with me?

THE COURT: Are you going to obey that order?

MR. LUMUMBA: Are you trying to hide an issue from this juror?

THE COURT: No. I am issuing an order for you to be quiet and sit down. Are you going to obey it or not?

MR. LUMUMBA: You won't listen to us when the juror isn't here, perhaps you'll listen now.

THE COURT: Are you going to obey it or not?

MR. LUMUMBA: Judge, the question I am asking you—

THE COURT: Are you going to obey it or not, yes or no?

MR. LUMUMBA: There is a matter to be heard. You just heard two jurors—

THE COURT: I am telling you now to sit down and be quiet.

MR. LUMUMBA: The fact that they are—

THE COURT: Take the juror out, Mr. Clerk.

(Tr. 930–31)

The juror was removed and Lumumba held in contempt.

**The Second Citation**

Lumumba's conduct continued to be disruptive, and the catalog of his comments includes statements that the trial judge made "snide comments" (Tr. 1614); that "the court's collaboration with the prosecution [was] quite nauseating" (Tr. 2054); that the District Court had no respect for black people (Tr. 2283); that Judge Duffy was "an outstanding bigot" (Tr. 2284); that Judge Duffy might want to testify on behalf of the Government in lieu of an accomplice witness (Tr. 2386–87); that the court acted unfairly toward the defense by taking actions which were a "silly, sobbing, patronizing, condescending appeal to the press" (Tr. 2646–49); that the court made rulings which consistently favored the prosecution; and that the District Judge was a "hypocrite" and "a disgusting bigoted partial joke." (Tr. 4774)

Lumumba in his defense of the contempt charge denied that these statements were disruptive and denied that they were intended to be disruptive. As to the suggestion that the District Judge might wish to testify for the government, Lumumba stated his disbelief that the statement was made in the form set forth in the transcript. He stated with respect to one of these statements that his intention was to "jolt the court" into recognizing what Lumumba considered to be prejudicial rulings.

Judge Duffy was not unaffected by this conduct, suggesting at one point that Lumumba should "look up in the books" (Tr. at 2281) why Judge Duffy had sustained certain objections. The following interchange with Lumumba has been cited as exemplifying the tensions between the bench and bar:

THE COURT: I will take the things the way I take them, Mr. Lumumba.

MR. LUMUMBA: I will call an ace an ace and a spade a spade so long as we understand each other.

THE COURT: Take a look at the buttons there, because quite shortly we are going to start using buttons and that is all there is to it.

MR. LUMUMBA: I don't know what you think you are doing. You are trying to intimidate people. I am here trying a case where a man's life is at stake. You don't have enough little threats and intimidations to discourage me.

THE COURT: No threats or intimidations. I want to tell you something. My father used to tell me that you don't reprimand the village idiot when he is looking for attention.

(Tr. 2390–91).

On June 8, 1983, Lumumba was engaged in cross-examination of a Federal Bureau of Investigation agent who had testified concerning his identification of the fingerprint of Lumumba's client on a document. After an extensive cross-examination, Lu-

mumba began to ask questions of the fingerprint expert about unrelated FBI investigations of various political organizations that had occurred years earlier, a subject area which the court had already ruled was not relevant to the case. Judge Duffy directed Lumumba to make an offer of proof outside of the presence of the jury. The following occurred:

MR. LUMUMBA: Okay, can I ask this question as an offer of proof? The jury is not around, Judge. You don't have to worry about the jury finding out how the FBI treated the black liberation movement.

THE COURT: If that's what we are getting into, it has no place in this trial.

MR. LUMUMBA: Why has it no place in this trial. You [sic] are here prosecuting the black liberation movement. It has nothing to do with the way your government treated us in the past, right? It's insane.

THE COURT: Tell me what you are attempting to prove.

BY MR. LUMUMBA:

Q. Have you—

THE COURT: Step down, Mr. Spriggle, and step outside. Tell me what you are trying to prove.

MR. LUMUMBA: Fine. Let him go. Wait until he leaves. I don't want him to hear it anyway because he will probably lie.

(Witness left the courtroom)

MR. LUMUMBA: The thing is that it is my belief that the document which is being entered into evidence, which you accepted into evidence for whatever reason, it doesn't talk about Brinks robberies or anything else, is a document which is totally consistent with documents which have pervaded the black liberation struggle since the time that the FBI has started killing different people in the movement, since the time that there was a manifest need for security, since the time that the black liberation movement has been paroling [sic] in communities trying to stop crime and therefore have had necessity for rules of this nature.

That being the case, I would like to point out through the specific document which you have suggested cannot come into evidence, which is almost identical in parts to this document, and through his knowledge of the documents which he may have examined, having been a person who has been in the FBI for 26 years during the period of time in which they have examined the whole files, the total files of various different movements, he can tell us that the principles in this document are not inconsistent with many of those other principles which come from groups which clearly had nothing to do with robbing Brinks trucks and were totally overground political formations which were functioning in a way which was legal even by corrupt laws of the United States.

So that point I am trying to make here is this, that if they are allowed to issue a document which has prejudicial impact if not explained, then I have a right to go into it and to explain it through this witness. That's one point.

Another point is I would like some kind of ruling on why you won't let me do what you let them do and then have the audacity to sit on the bench and claim you are fair.

THE COURT: Look Mr. Lumumba, you have been held in contempt more than once and you are held in contempt again.

(Tr. 4822–24). According to Lumumba, the evidence he sought to introduce related to the findings of Senator Church's Committee with respect to the counter-intelligence activities of the FBI.

### Conclusions

This proceeding presents in quite stark terms the painful dilemma which on occasion confronts judges and lawyers when a clash occurs between what the judge perceives is the need for orderly procedure and the lawyer believes is effective advocacy. These clashes become sharper and more difficult in cases which receive a great detail of public attention, as did the

*Brinks* case. The difficulty is enhanced by the need for quick and resolute action, whether by the court or the attorney, at the moment of decision and by occasional confusion created by reviewing courts as they consider the nature of summary contempt. This proceeding exemplifies with painful precision the problems encountered.

The Court of Appeals in its reversal appeared to base its actions on *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1973), and indeed its opinion reflected the *Taylor* language. However, unlike the situation in *Taylor,* the defendant here had received notice of the contempt conviction and been given an opportunity to be heard to present mitigating factors before punishment was imposed. Notwithstanding, the conviction here was reversed presumably for a *Taylor* type hearing (something "less than a full blown trial") although such a hearing had already taken place as set forth above.

It is unavoidable, as a consequence of the reversal, however, that I must now review Judge Duffy's findings of contempt, *de novo,* and try Lumumba on a charge of contempt found to have been committed by one of my brother trial judges. Were I to state that I have totally disregarded Judge Duffy's conclusions, such a statement would not be credible. I have, however, sought to view the issue as best I can solely from the written record and the testimony presented to me.

For whatever it is worth, the difficulty stemmed from differing perceptions of the trial, its purpose, and the limits of advocacy. Lumumba sought to confront what he believed to be the political implications of the trial, and Judge Duffy sought to eliminate such implications. However, political conviction cannot serve to cloak the abusive and improper conduct of an advocate and an officer of the court from sanction.

The testimony presented to me focused in some detail upon actual disruption and Lumumba's intent, or lack thereof, to disrupt, thus advancing the defense that a charge of contempt is warranted only when there is a delay in the proceeding or some physical disruption. As every participant in the trial process knows, there is a delicate and occasionally exquisite balance between orderly administration of justice and the damage caused by the untrammelled discharge of emotion. There is, and must be, a line between forceful advocacy and judge-baiting, and Lumumba went over that line.

■ The first contempt was a direct disobedience of an appropriate order at the very beginning of what was anticipated and proved to be, a difficult, publicized trial. Lumumba's conduct was not necessary to preserve the point for appellate review. The issue had been considered and ruled upon, no new matter was advanced, a prospective juror was present, and the pace of the proceeding had to be established. Lumumba's refusal to obey the court's direction was contumacious.

■ The second contempt presents a far more subtle misconduct. The jury was not present, and an offer of proof was being made on the subject of FBI activity, the relevance of which the court had already ruled on. Lumumba had previously made violent, verbal attacks upon Judge Duffy, already set forth above. Against these comments, the request:

> ... I would like some kind of ruling on why you won't let me do what you let them do and then have the audacity to sit on the bench and claim you are fair

constituted a challenge to the court that was contemptuous.

■ It is true that "[T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate." *In Re Little,* 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1972), *quoting Craig v. Harney,* 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947). Nonetheless, there is an objective standard of respect that must be met for the system to survive. Direct and unceasing challenges in open court to the integrity of the judicial process, made without

foundation, are an appropriate subject for contempt. As long as society seeks justice through open and public trials, all concerned must comply with an objective standard of propriety to permit the process to function and to earn respect for its function. As a reality and as a matter of precedent judges must protect the justice system which they serve by enforcing an appropriate standard of conduct. Lumumba's statements, like wearing a clown's suit to court, breached that standard. On the second occasion he was also contemptuous.

As to the procedure followed by Judge Duffy, I continue to believe that this remand was not necessary, and that it was appropriate for Judge Duffy to find Lumumba in summary contempt and that all that was required to meet due process requirements was a hearing prior to sentence, which hearing was accorded. *Taylor v. Hayes*, 418 U.S. 488, 498–99, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974); *Weiss v. Burr*, 484 F.2d 973 (9th Cir.1973); *United States v. Galante*, 298 F.2d 72, 76 (2d Cir.1962) (Friendly, J., concurring and dissenting).

Judgment of conviction will be entered. Sentencing will take place on March 13, 1985 at 9:15 a.m. or at such other time as will suit the convenience of the parties and counsel.

**IT IS SO ORDERED.**